## The San Antonio & Aransas Pass Railway Company
### v. H. L. Kniffen.
#### No. 25.

1. **Allegations — Exemplary Damages.** — The allegation that the act complained of was done unlawfully, wantonly, and maliciously, and with the fraudulent intent to deprive plaintiff of the value of the coal, was sufficient, without alleging the circumstances showing it to have been so done.

2. **Charge of Court.**—The charge of the court directed the jury to separate their findings of actual and exemplary damages, "in order that the amount of either or both may be known." Taken with the remainder of the charge, the jury could not have understood that they were expected to find both actual and exemplary damages.

3. **Exemplary Damages.**—The verdict for exemplary damages is sustained by the evidence, and is not excessive; and the question was properly submitted to the jury. There was evidence going to show that the sale had not been fully consummated when defendant used the coal. If defendant desired to use as a defense against or in mitigation of exemplary damages, the fact that the coal was used because defendant believed in good faith that it had a legal offset against plaintiff for the value of the coal, defendant should have asked a charge submitting that view of the case to the jury.

Appeal from Bexar.    Tried below before Hon. W. W. King.

*Upson & Bergstrom*, for appellant.—The question of exemplary damages ought not to have been submitted to the jury.    1 Suth. on Dam.,

723, 724; 3 Suth. on Dam., 740, 741; Brown v. Allen, 35 Iowa, 306; Baer Bros. v. Marx & Kempner, 63 Texas, 298.

*J. H. McLeary*, for appellee.—On question of exemplary damages: Cole v. Tucker, 6 Texas, 267; Champion v. Vincent, 20 Texas, 815; Cook v. Garza, 9 Texas, 360; Brown v. Bridges, 70 Texas, 664; Jacobs, Bernheim & Co. v. Crum, 62 Texas, 415; Day v. Woodworth, 13 How., 371.

On charge of court: Railway v. Dunlavy, 56 Texas, 258; Railway v. Stewart, 66 Texas, 170; Jackel v. Reiman, 78 Texas, 591.

JAMES, Chief Justice.—*Conclusions of Fact.*— 1. The plaintiff, H. L. Kniffen, sued the appellant for the value of certain coal, amounting, as claimed, to the sum of $2333, shipped to and used by appellant between February 26, 1890, and March, 1890. All of the petition was struck out on exception, except the claim for value as above, and those portions upon which exemplary damages were asked in the sum of $10,000. No exception was presented by Kniffen to the action of the court striking out part of his petition as aforesaid; on the contrary, he is asking affirmance of the judgment.

Appellant does not ask a reversal for any error in the judgment against it for the $2333 actual damages, and we have only to consider the record as to errors assigned in reference to the finding of $1000 exemplary damages.

The jury returned a verdict for exemplary damages in the sum of $1000, with 8 per cent interest per annum from date of appropriating the coal, which interest was remitted by plaintiff in the District Court.

The exception to plaintiff's pleadings which was overruled was a general one, as follows: " To the allegation in the petition claiming exemplary damages, because said petition fails to state any facts entitling plaintiff to recover such damages."

The petition alleges, that the shipment of coal in each instance was to plaintiff's order, plaintiff drawing his draft on the defendant for the value thereof, with bill of lading attached, upon which was endorsed, " Deliver to the San Antonio and Aransas Pass Railway." It also alleges, in connection with each separate shipment, that the draft was duly presented and not paid, but nevertheless the defendant, through its officers, agents, and servants, took forcible possession of the carloads of coal, and unlawfully, wantonly, and maliciously appropriated the same to its use and benefit, without plaintiff's consent, and with the fraudulent and felonious intent to deprive plaintiff of the value thereof.  *   *   *   And that by reason of the wrongful, wanton, and outrageous act of defendant's officers, agents, and servants, and the willful and wanton and utter disregard of the plaintiff's rights in the premises, in taking possession of his property without his consent, and forcibly appropriating the same to the use of the

defendant, and by the refusal of all compensation for said grievous wrongs and flagrant trespasses, the defendant has become liable to pay to the plaintiff vindictive, punitory, and exemplary damages, for which plaintiff prays in the sum of $10,000."

2. The answer was a general denial; and also a setoff in the sum of $3060.37, based on allegations, in substance, as follows: That said coal was shipped under an order given by defendant on or before November 18, 1889; that prior to the shipment of said coal, defendant had received from plaintiff on said order 6120½ tons of coal; that in said order the plaintiff was directed to consign said coal to defendant from McAlister, in the Indian Territory, via West Point, Texas, to Yoakum, Texas; that plaintiff accepted such order and instructions, but did not consign the coal to Yoakum, and caused it to be stopped at West Point; that defendant was to pay the freight, and that defendant had an arrangement, as plaintiff knew, with the Missouri, Kansas & Texas Railway Company, over which the coal was sent, by which defendant was entitled to $1 per ton upon all shipments to Yoakum, Texas, which would leave a net rate of $2.50 per ton to West Point; that the rate from McAlister to West Point on coal that was not shipped through to Yoakum was $3 per ton, and that by plaintiff not shipping the coal to Yoakum as per agreement, defendant was caused damage in the sum of 50 cents per ton on the 6120½ tons, amounting to $3060.37, asked to be allowed defendant against plaintiff.

Those portions of the court's charge assigned as error are as follows:

" 2. The plaintiff further claims, that he is entitled to recover from the defendant exemplary damages for the alleged wrongful conversion of plaintiff's coal; and upon this subject you are charged, that if you believe from the evidence that the defendant, in willful and wanton disregard of plaintiff's rights to the coal, took possession thereof without his consent, and without compensation appropriated the same to the use and benefit of the defendant, under such circumstances as operated as a fraud upon plaintiff's rights, or in willful and wanton disregard thereof, then you may, in addition to the price of the coal, find exemplary damages in such sum, in view of all the circumstances surrounding the commission of the alleged trespass, as you may think right and proper."

"4. In your verdict you are instructed to separate your findings of actual and exemplary damages, in order that the amount of either or both may be shown."

The court also gave the following in charge to the jury: "The defendant claims an offset against plaintiff of $3060.37, by reason of an overcharge in freight paid by defendant; and upon this subject you are charged, that if you believe from the evidence that the defendant directed the plaintiff to cause the coal to be shipped to the town of Yoakum, and the plaintiff disregarded said instructions, and shipped the same to the

town of West Point, whereby the defendant was compelled to pay an increased rate of freight in the sum of $3060.37, then you will allow the defendant that sum in offset, unless you believe from the evidence that the shipment to West Point was by and with the consent of the defendant, and that consent may be established by word or oath of defendant.''

The evidence by which the verdict for exemplary damages is supported (if sufficient in law to support it) is as follows:

The testimony of Kniffen, in substance, that he had not, on or about November 17, 1889, agreed to ship the coal to Yoakum instead of to West Point, unless the defendant would have payment for the coal delivered at West Point guaranteed, which was never done. That before shipping to Yoakum the coal sued for, he had a conversation with A. G. Cooper, the auditor of defendant's road, and Cooper promised him that if he would bill the coal through to Yoakum, so as to give them the benefit of the through rate of freight, the coal would be left on the side track, and none of it would be used until it was paid for. That when the bank reported the drafts not paid, he went to San Antonio and saw Mr. Cooper about it, who said that the company had not paid the drafts, but had used the coal, and that I would have to see their attorneys about it. That he then went to the company's attorneys, and was by them informed that the drafts had not been paid because they had a claim on him for about $3000 freight overcharges on coal shipped from November to February. That he then went to Yoakum to look after his coal, but on arriving there found the coal had been nearly all used; saw the agent at Yoakum, and asked him about the coal, and the agent said he did not like to tell tales out of school, but the company has been "using your coal without paying for it." He was also informed by another agent that orders had been received from the main office to use the coal. Kniffen also testified, that he told Mr. Yoakum that Mr. Cooper, on February 19, 1890, when Cooper gave his personal assurance that the coal would not be used until paid for, that he would ship all coal thereafter to Yoakum. It was in evidence that B. F. Yoakum was general manager of the road.

A. G. Cooper testified, that the coal was ordered by the general manager of the San Antonio & Aransas Pass Railway Company, and was shipped to the order of Kniffen, to be delivered to defendant on his order; defendant agreed to pay $2.25 per ton for the coal free on board at the mines. The freight was to be, and was, paid by defendant; defendant used the coal, and they considered they had a right to take it as an offset to a claim they had against Kniffen. "I gave Mr. Kniffen my personal promise that the coal would not be used until paid for. I directed our agent at Yoakum to use the coal as an offset to our claim against Mr. Kniffen." The agent at Yoakum testified, that he received this order from the main office, thus identifying Cooper with the main office.

The foregoing is the substance of the testimony upon which the verdict of the jury for exemplary damage must stand, if at all.

The assignments of error raise the following questions only:

1. Did the court err in overruling the exception above mentioned to plaintiff's petition?

2. Did the court err in submitting to the jury the question of exemplary damages, for the reason, as appellant puts it, that there was no evidence authorizing a recovery of exemplary damages; the uncontradicted evidence showing that the coal sued for was sold by plaintiff to defendant at a fixed price, and shipped to defendant over its line of road, and defendant received and used the coal without paying therefor, and failing to pay for it because defendant then believed in good faith that it had a legal offset against plaintiff for the value of the coal?

3. Did the court err in giving the fourth charge, on the ground, as appellant states it, that it assumes that the jury could and must find a verdict for plaintiff for both actual and exemplary damages?

4. Did the court err in permitting a remittitur of interest in connection with the finding of exemplary damages?

*Conclusions of Law.*—The court did not err in overruling the exception. The allegation that the act complained of was done unlawfully, wantonly, and maliciously, and with the fraudulent intent to deprive plaintiff of the value of the coal, was sufficient, without alleging the circumstances showing it to have been so done. Cone v. Lewis, 64 Texas, 331; Gross v. Hays, 11 S. W. Rep., 523. Nor was any error committed in the charge directing the jury to separate their findings of actual and exemplary damages, "in order that the amount of either or both may be known." Taken together with the remainder of the charge, the jury could not have understood that they were expected to find both actual and exemplary damages; and the concluding part of that clause, in quotation marks above, excludes that understanding of it. The interest that was remitted was a part of the exemplary damages found, and this assignment of error is not well taken.

The appellant contends, that the court "erred in submitting the question of exemplary damages, and that the verdict for exemplary damages was contrary to the law and the evidence, as the uncontradicted evidence shows that the coal sued for was sold by plaintiff to defendant at a fixed price, and shipped to defendant over its line of road, and the defendant used the coal without paying therefor, and failing to pay for it because defendant then believed in good faith that it had a legal offset against plaintiff for the value of the coal."

The charges of the court are not complained of as not stating correctly the rule in reference to exemplary damages, and the above contention is not well founded for two reasons: first, because there was evidence going

to show that the sale had not been fully consummated when defendant used the coal; and second, if defendant desired to use as a defense against or in mitigation of exemplary damages, the fact that the coal was used because defendant believed in good faith that it had a legal offset against plaintiff for the value of the coal, defendant should have asked a charge submitting that view of the case to the jury. Having failed to ask such matter submitted, defendant is in no position to have this court consider such matter, or to complain if the jury did not take it into consideration.

These matters disposed of, we have the remaining question, that of determining whether or not this was a case in which exemplary damages could lie; and if so, the more serious question of whether or not there was evidence upon which a verdict for such damages can legally rest.

Exemplary damages will not ordinarily lie in action for breach of contract. This action, according to the pleadings of plaintiff, was for the value of coal converted by the defendant, the title to which remained in plaintiff, thus stating a tort; and it is well settled that such damages lie in suits for the tort known as conversion, in proper cases—that is to say, where the act constituting a conversion has been attended with circumstances of fraud, malice, or wanton disregard of the rights of plaintiff. Cole v. Tucker, 6 Texas, 266; Oliver v. Chapman, 15 Texas, 409; Railway v. Shirley, 54 Texas, 125; Kolb v. Bankhead, 18 Texas, 228; Gordon v. Jones, 27 Texas, 662; Gross v. Hays, 11 S. W. Rep., 523.

The evidence clearly shows, that the coal was shipped to plaintiff's order, and the defendant not paying the drafts, did not obtain the bills of lading or an order entitling it to the coal. It also clearly appears that the coal was allowed by plaintiff to go upon defendant's line of railroad to Yoakum, and thereby come into the custody of defendant, upon the promise of one of defendant's officers, A. G. Cooper, the auditor, that it would not be used by defendant until it was paid for. It seems that the general manager of defendant's road was present when this promise was made. The evidence also shows clearly that the coal was used by defendant without being paid for. That a conversion of the coal to defendant's use took place is evident; but to render the defendant liable in damages beyond what was necessary to compensate plaintiff for the value thereof, requires, in addition to the act, that it was done under some or one of the aggravated circumstances above indicated.

What circumstances are shown in the evidence surrounding this act of conversion? The jury were authorized, from what was before them, to conclude that Kniffen refused to allow his coal to go upon defendant's line of road and into its hands without first being paid therefor, and that he was induced to relax this position and allow this to be done on the promise of the company's auditor, that if the coal was shipped through to Yoakum, thereby enabling defendant to save on its freight, the same would not be used until paid for. They further could fairly conclude

that this promise was made in the presence of B. F. Yoakum, the general manager of the road, and therefore that it was the act of the defendant; and further, that the underlying purpose of defendant in making such promise, and in thus obtaining custody of the coal, was to use it and not pay for it, or at least to delay and harrass plaintiff in the collection of his money by interposing a plea of offset, which the jury ascertained to be unfounded in fact. If the jury took this view of the case (and it was not inconsistent with the facts), after they had ascertained under a proper charge that the claim for setoff was baseless, we are unable to say that their verdict for exemplary damages was wrong. The circumstances under which defendant obtained the possession of the coal, and the subsequent appropriation of it, would indicate an act characterized by a wanton disregard of plaintiff's rights, and a purpose either to defraud plaintiff of his coal or to harrass him in the assertion of his rights thereto; and we understand the decisions in this State as permitting exemplary damages in cases showing these attending circumstances.

The verdict not appearing excessive, the judgment is affirmed.

*Affirmed.*

Delivered October 11, 1893.