The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## FREEBORN v. DAVIS.

### No. 4957.

Court of Civil Appeals of Texas. Amarillo.

Dec. 12, 1938.

Hull & Oliver, of San Antonio, and Boone, Henderson, Boone & Davis, of Corpus Christi, for appellant.

C. O. Hamlin and Hubbard, Stafford & Little, all of Corpus Christi, for appellee.

FOLLEY, Justice.

This is an appeal from an order overruling the plea of privilege of Nellie M. Freeborn, appellant herein and defendant in the trial court. The appellee, C. A. Davis, as plaintiff in the trial court, is a resident of Nueces County, Texas, and Mrs. Free-

born is a resident of Bexar County, Texas. The suit was filed in Nueces County and the appellant filed her plea of privilege to be sued in Bexar County.

The appellee's suit was to recover damages from appellant for the alleged breach on her part of a purported agreement to lease a building to appellee in the Beach Addition to the city of Corpus Christi, Nueces County, Texas. The alleged agreement was based upon two instruments signed by the appellee, on the one hand, and by H. G. Sherman, as the alleged agent of Mrs. Freeborn, on the other. The first of these instruments was dated January 19, 1937. The second was dated January 20, 1937. The first instrument was a formal lease agreement purporting to lease the property to appellee for a period of three years, beginning March 1, 1937, at a rental in the total sum of $9,000. This instrument contained a provision that the lessee should pay the rent at Corpus Christi. The second instrument dated January 20th, was more in the form of an agreement to execute a lease on the property, wherein it provided that Mrs. Freeborn, upon request of the appellee, should execute a lease of the premises to the appellee for the term of years specified in both instruments. The second instrument provided that the lease to be executed should contain the provisions as set out in the first instrument with certain alterations and additional obligations not contained in the first instrument. The testimony shows that the Fred Quaile Realty Company of Corpus Christi through Herman Plath, its representative, negotiated the transaction with Sherman in behalf of the appellee, C. A. Davis.

During the negotiations pending the execution of these instruments by the appellee and Sherman, the latter talked to Mrs. Freeborn, who was in San Antonio, over the telephone. In response to such conversation the appellant dispatched to Sherman the following telegram: "Accept your offer as per your letter provided tenant insures and pay for plate glass and pay two months rent in advance." Just what was meant by the phrase, "as per your letter" was not explained, as the proof showed there was no such letter and none was therefore introduced. We think the testimony does show that both of the instruments in question were executed after the receipt of the above telegram.

The trial court, in his conclusions of law, concluded that H. G. Sherman was held out by the appellant as her agent, that he was duly authorized to execute the instruments in question, and overruled appellant's plea of privilege upon the theory, according to the appealing parties, that the provision in the first instrument providing for the rent to be paid in Corpus Christi brought the suit within the exception provided in Subdivision 5 of Article 1995, R.C.S. of Texas, Vernon's Ann.Civ.St. art. 1995, subd. 5, as to the exclusive venue in the county of defendant's residence. The appellant properly reserved an exception to this ruling by the trial court, and asserts that the testimony does not warrant the conclusion that Sherman was authorized to act as the agent of the appellant or that appellant was bound by the provisions of the instruments.

The only testimony in the record in support of the trial court's conclusion that Sherman was held out by the appellant as her agent is from the witness, H. J. Closterman. He, like Herman Plath, was connected with the Fred Quaile Realty Company of Corpus Christi. Some time in November, 1936, he made a trip to San Antonio to see the appellant about this property. He inquired about the sale of the building. Mrs. Freeborn told him that she was not interested in selling the property but would be interested in making a long time lease on it. Certain figures were discussed as to the rental price but nothing definite was arrived at. She stated to him that "before any conclusion would be reached, that she would have to discuss the matter with Mr. Sherman of Corpus Christi." She identified Sherman in this conversation as having been connected with her husband in business. Upon this testimony the trial court made the following finding of fact upon which his conclusion was based that Sherman was held out as the agent of the appellant: "Some months prior to the 20th day of January, 1937, the defendant, Mrs. Nellie M. Freeborn, had advised H. J. Closterman, a realty salesman connected with the Fred Quaile Realty Company, that the property in question was not for sale, but that she would consider leasing it, and any negotiations pertaining to leasing this property would have to be conducted through Mr. H. G. Sherman, of Corpus Christi, Texas."

It is our opinion that the testimony from Closterman is wholly insufficient to sustain either the above finding of fact or the conclusion by the trial court that the appellant

was holding out Sherman as her agent with authority to execute the lease contract in question. There is a decided distinction in the statement that appellant would have to discuss the rental matter with Mr. Sherman and the finding by the trial court that "any negotiations pertaining to leasing this property would have to be conducted through Mr. H. G. Sherman of Corpus Christi, Texas." Furthermore, granting that the appellant should have asserted that the negotiations would have to be "conducted" through Mr. Sherman, such a statement would not warrant the conclusion that Sherman was thereby fully authorized to execute the lease contract in behalf of the appellant.

H. G. Sherman was introduced as a witness for the appellee. He testified that Mr. Freeborn, formerly the husband of the appellant, had been for nineteen years his associate in the real-estate business in Corpus Christi; that they had owned certain properties together; that they had made a division of the property and Mrs. Freeborn held certain portions of such property in Corpus Christi; that he once acted as a friend, not as an agent, to get a loan for her on a building known as the Woolworth Building; that he had done many other things for her, but he never charged her a commission or received any pay; such was done as a friend of the family; he made it plain to Mr. Plath and Mr. Davis that Mrs. Freeborn would have to pass on anything that was done; that it was plainly understood by all the parties all the time during the negotiations that the papers would have to be approved by Mrs. Freeborn; that Plath and Davis never asked him about any commission or promised him any part of any commission for the deal; that he did not ask for any commission and did not want any; that if they had given him any commission he would have given it to Mrs. Freeborn; that he had never been her agent; that he had done a lot of friendly things for Mrs. Freeborn and her family and would continue to do so; that he had expected that the contract would have to be passed upon by Mrs. Freeborn's attorney in San Antonio; that as far as his authority was concerned, he never had any; that whatever trade he made with anyone would have to be ratified by Mrs. Freeborn; that he never, in any manner, prior to signing the instruments, gave Mrs. Freeborn the complete details of the instruments; that he did not discuss with her the terms nor the details that are to be found in the printed form; and that Mrs. Freeborn had never authorized him to make or execute any contract for her.

The above testimony stands unimpeached by any witness in this case. Moreover, neither the appellee nor the witness Plath denied that it was plainly understood by them that any agreement made would have to be finally approved by Mrs. Freeborn. In further support of Sherman's testimony in this regard is the fact that, above the signatures of both Sherman and Davis in the instrument of January 20th, there was left a blank space for the signature of Mrs. Freeborn under which was written the word "Lessor." Furthermore, the testimony is uncontroverted that, incident to execution of the instruments, the appellee agreed to furnish the appellant a statement as to his financial standing. Just why a financial statement would have been a necessary condition of the transaction unless a future acceptance or rejection of the contract by the appellant was contemplated by the parties, is unexplained.

■ Under the facts of this case it appears that no one was in better position than Sherman to know whether or not he was an agent of the appellant and authorized to execute the instruments for her. In 2 Tex.Jur. 538, para. 137, it is said: "If the authority of the agent is not shown to have been in writing, his testimony is admissible on the questions as to whether an agency existed in fact, and as to the extent of his authority. Such testimony is original evidence, and, as such, it is not open to the objection that it is hearsay."

■ Also, in the case of Autrey et al. v. Linn et al., Tex.Civ.App., 138 S.W. 197, 198, writ denied, it is held: "The direct evidence of Nevill in the trial of the cause is not a declaration of agency on the part of the agent condemned by the general rule. Those are declarations made in connection with the acts claimed to be those of an agent. The evidence of an agent in court as to his agency does not come within the rule that agency cannot be proved by the declarations of the agent. It is the well-established rule that while the declarations and admissions of the agent are inadmissible to prove agency, yet the agent himself is competent to testify as to the alleged agency and its extent."

In further support of this proposition are the following cases: Slaughter & Veal et

al. v. Schneider, Tex.Civ.App., 289 S.W. 414; Moore et al. v. Coleman et al., Tex. Civ.App., 195 S.W. 212, writ refused; Bayliss v. Raney et al., Tex.Civ.App., 273 S. W. 932; American Telegraph & Telephone Co. v. Kersh et al., 27 Tex.Civ.App. 127, 66 S.W. 74, writ refused.

■ It is therefore our opinion that the testimony in this case is insufficient to show that Sherman had the authority as an agent to execute the contract in question. Any authority he had was a limited one, evidenced by the request for and the sending of the telegram. If he was generally authorized as an agent to execute the contract in question, it follows that it would have been unnecessary to seek any confirmation on the part of the appellant.

The trial court further found that the instruments in question were executed by H. G. Sherman only after the latter had communicated with the appellant "explaining the appellee's proposition to her," and concluded that if Sherman did not originally have actual authority to make the contract in question, the appellant conferred such authority upon him by sending the telegram "after having appellee's proposition explained to her." Just what "appellee's proposition" was which was "explained" to the appellant is undisclosed by the testimony. We presume that the trial court had in mind the various provisions of the two written instruments. If such is the case, the testimony does not warrant such finding. As has been stated, Sherman testified positively that the provisions of the instruments were not revealed to the appellant. The only other testimony in the record on this issue was from the appellee and his witness, Plath. Neither of them asserted that anything was discussed in the telephone conversation other than the rental price of the property, the financial responsibility of the appellee, and the request for the telegram confirming the offer. There is no indication from the evidence as a whole that, at the time of sending the telegram, the appellant was either cognizant of the 'terms of the instruments or that she knew any such instruments were in existence. There was certainly no testimony to indicate any agreement on her part as to the place of performance of the contract. Moreover, there is nothing in the telegram itself that could reasonably be construed as conferring upon Sherman any authority to enter into a contract for her with the appellee. At most, the telegram could be said to be only a conditional acceptance of some sort of an offer that is neither fully revealed by the telegram nor by the evidence. On the whole, the record as presented, utterly fails to show a meeting of the minds of the contracting parties upon the purported contract that forms the basis of this action.

■■ It is well settled, we think, that when the question of venue is properly raised, as in this case, before the suit may be maintained in any other county than the residence of the defendant, the person bringing the suit must not only allege but prove that the case is within one of the exceptions of the statute. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91. It is equally well settled "that a sworn plea of privilege, without further pleading, operates as a sworn denial of the execution by the party urging the plea, or by his authority, of a written instrument relied upon by contestant to bring the case under the exception, and casts upon him the burden of proving, by extrinsic evidence, the execution of the alleged instrument." Pavlidis et al. v. Bishop & Babcock Sales Co., Tex.Civ.App., 41 S.W.2d 294, 295, and authorities cited; Williams v. Doering, Tex. Civ.App., 28 S.W.2d 893. It is our opinion that the appellee wholly failed to discharge this burden. His whole suit is based upon the authority of H. G. Sherman to execute the lease contract. He has not shown by the proof that Sherman possessed such authority. The trial court therefore erred in overruling appellant's plea of privilege to be sued in Bexar County.

Accordingly, the judgment of the court below must be reversed and judgment here rendered directing the transfer of the suit from Nueces County to Bexar County, Texas, and it is so ordered.

Reversed and rendered.