**KROGER FOOD COMPANY et al.,**
**Appellants,**

v.

**Caesar SINGLETARY, Appellee.**

No. 7027.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 13, 1969.

Judgment Made Final March 6, 1969.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, for appellant.

Musslewhite, Maroney & Cely, Lufkin, for appellee.

KEITH, Justice.

Plaintiff, Singletary, recovered judgment against defendant, Kroger Food Company, and its manager, Len Brown, for conversion of his automobile ($175.00), the rental value thereof during its detention ($1,760.00), and exemplary damages ($3,-925.00). The parties will be designated as they appeared in the lower court.

On a Saturday afternoon, plaintiff went to the Kroger supermarket in Lufkin to purchase groceries in his 1954 Chevrolet which he had had for some eight or ten years, and was accompanied by a boy thirteen years of age. He parked on Kroger's parking lot, left the boy in the car sitting upon the back seat and the keys in the ignition. Within a few minutes, the car had crashed through a large plate glass window of Kroger's store, and the boy was then sitting in the driver's seat. The circumstances surrounding this change of position of the car is not explained in the record.

The crash made, in plaintiff's words, "a real loud noise," whereupon, he went to where his car was then located. Apparent-

ly Len Brown, Kroger's manager, also learned of the intrusion of the Singletary vehicle into his food store, because within a few minutes, according to Singletary, Brown was asking him if he had insurance upon the vehicle (which he did not have) and advising him that "I am going to hold your car for damage to this window plate glass." In a few minutes, the police were upon the scene along with a wrecker operated by Merl Selman. Selman testified he was summoned by the police.

Selman hooked onto plaintiff's car and removed it from the store, whereupon, Selman handed plaintiff his card and proceeded to haul off Singletary's vehicle, leaving him to walk home from the grocery store.

Denying that he gave anyone, either Kroger, the police, or Selman, permission to haul off the car, plaintiff testified that Brown told him that he was going to hold the car for damages to his window, amounting to $500.00, until he was paid. This being on a Saturday afternoon, we find Singletary in his lawyer's office either that afternoon or early the next week following which he made a trip to Selman's wrecking yard. He did not regain possession of the car then or later. All subsequent dealings with reference to possession of the car were left to his lawyers.

One of Singletary's lawyers testified that he called Brown upon the telephone and was advised that "he was holding it and before he could release the man's automobile that he would have to call his superiors in Dallas." Further, Brown was quoted as saying that "he had had it hauled over to Selman's and he was holding it until Kroger Company was repaid for their glass." Three or four days later, in a telephone conversation with Selman, the investigating lawyer was told that the car was available upon payment of $14.50. Brown refused to pay the $14.50 which had accrued and this suit followed.

In one of the conversations with Brown, plaintiff's lawyer says that he advised

Brown that in his opinion he could not hold Singletary's car legally for a debt due Kroger, but Brown still refused to restore the possession of the car to plaintiff. Selman was quoted by the lawyer as saying that the demand for the $14.50 was for his services and did not include any damages claimed by Kroger.

Brown did not testify although it appears from the record that he was employed in a competitively owned store in Lufkin at the time of trial.

The jury found: (1) plaintiff's car was converted by Kroger and Brown; (2) which was done by Brown in the scope of his employment with Kroger; (3) the fair market value of the car at the time of the conversion was $175.00; (4) that it was "wrongfully detained" for 440 days; (5) the fair rental value during the period of detention was $4.00 per day; (6) that Singletary was entitled to exemplary damages *against Brown*; (7) such exemplary damages being fixed at $3,925.00; and (8) that Brown acted "willfully" and did demonstrate "that he was consciously indifferent to the rights of others", while he was acting in the scope of his employment for Kroger.

The first defensive issue was answered against defendants when the jury declined to find that Selman offered to release plaintiff's car on the date of the incident upon payment of the wrecker charges of $7.50. The remaining defensive issues were not answered since they were submitted contingently upon the first.

The judgment for the plaintiff was entered upon the basis of the verdict after the court had overruled the defendants' motion for judgment *non obstante veredicto*. The appeal is predicated upon twenty-three points which are briefed in three groups.

The first series of points contends that (1) the trial court erred in overruling the objection to the charge because of the failure to submit the question of agency on the part of Selman; (2) because Selman was the only person who exercised "actual

dominion and control" over the car; (3) there was no finding that Selman was the agent of the defendants; and (4) that Special Issue No. 1, inquiring if Brown converted plaintiff's automobile, was a comment upon the weight of the evidence since only Selman had physical control thereof. We have carefully considered the series and each point in this group is hereby overruled.

Upon the trial, plaintiff brought Helen Gilbert, "head cashier" at Kroger's Lufkin store, who testified that upon the date of the incident she knew that Brown was manager of the store, having held such position for approximately six months. Kroger tendered Selman as a witness, thereby vouching for his credibility, and throughout his testimony, Brown was identified as the "manager" of Kroger. Kroger offered no other witness and made no dispute of the fact that Brown was in truth and in fact its manager or was not acting for Kroger in directing Selman to remove plaintiff's car from Kroger's premises.

■ This series of points tenders the complaint that the court assumed Selman was the agent of Brown and Kroger. But, having tendered Selman, Kroger established Brown's direction to him to hold the car on his lot until the damages caused by the car had been paid. With Brown's agency being admitted, the point loses its force.

■ The general rule that agency cannot be proved by the declarations of the agent has no application to testimony given upon the trial by the alleged agent as to the fact and extent of his authority. Cook v. Hamer, 158 Tex. 164, 309 S.W.2d 54, 57 (1958); Yellow Cab Co. v. McCloskey, 82 S.W.2d 1042, 1043 (Tex.Civ.App., 1935, err. dism.); Freeborn v. Davis, 122 S.W. 2d 645, 647 (Tex.Civ.App., 1938, no writ); Autrey v. Linn, 138 S.W. 197, 198 (Tex.Civ. App., 1911, err. ref.); Gibson v. Gillette Motor Transport, 138 S.W.2d 293, 294 (Tex. Civ.App., 1940, err. ref.); Gallop v. Seagoville Investments, Inc., 417 S.W.2d 727, 729 (Tex.Civ.App., 1967, err. ref. n. r. e.); 3 C.J.S. Agency § 324, p. 287; 2 Restatement, Agency, § 284, Comments (a) and (e).[1]

There is no dispute but what Brown was Kroger's agent (its store manager) at the time and place in question. The jury found that he was acting in the course and scope of his employment when plaintiff's car was taken from Kroger's premises. Selman testified, and it stands undisputed in the record, that he was directed by Brown to take the car out of the window, take it to his storage lot, and hold it there.

Thus, under this record, defendants' reliance upon Neeley v. Southwestern Investment Company, 430 S.W.2d 465 (Tex.Sup., 1968) is unavailing. The points relating to Selman's agency are, therefore, overruled.

The next series of points challenges the findings on exemplary damages and we state the substance of the special issues before setting out the contentions: Special Issue No. 6 found that the plaintiff was entitled to exemplary damages against the defendant, Brown.[2] Special Issue No. 7 set the amount of the exemplary damages at the sum of $3,925.00.

The first point in this series (No. 5) asserts that there was no evidence to support the answer to Special Issue No. 6; the second (No. 6) claims that there was in-

1. Comment (e): *"Judicial admissions.* A statement made by an agent may not only have operative effect, but it may be of conclusive importance * * * "

2. The instruction accompanying this issue was: "In arriving at your answer to the foregoing issue you are instructed that exemplary damages may be award-ed for the purpose of making an example out of the party causing injury to another through acts done willfully or committed under circumstances imputing negligence to the wrongdoer of such a degree so as to show that the wrongdoer was consciously indifferent to the rights of others." There is no point challenging this instruction.

sufficient evidence to support such answer; and the third (No. 7) contends that the answer thereto is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Points 8, 9, and 10 make identical complaints with reference to Special Issue No. 7, while Point 11 complains of the action of the court in overruling the motion for judgment non obstante veredicto because there was no evidence that the conduct of Brown was "willful, malicious or negligent to such a degree that he was acting in conscious disregard of the rights of the plaintiff."

█ In passing upon the "no evidence" points, we consider only the evidence favorable to the findings of the jury. In passing upon the insufficiency of the evidence points and those contending the findings of the jury were contrary to the weight and preponderance of the evidence, we consider the entire record.

Defendants' statement under this series of points, being commendably brief, is reproduced in its entirety:

"Immediately after the occurrence in question, there is evidence that Len Brown, manager of the Kroger store, informed both the plaintiff and Merl Selman, the wrecker operator, that he intended to hold plaintiff's automobile for damages sustained by the glass window through which plaintiff's automobile was driven by Welton Teal. There is also evidence that Len Brown reiterated his position to John Tatum, one of the attorneys for plaintiff, a few days after the occurrence in question. Merl Selman also testified that Len Brown advised him to release plaintiff's automobile sometime after the occurrence in question, date uncertain, but Merl Selman refused to do this because his wrecker charges and storage charges had not been paid."

To this, plaintiff adds the fact that one of his lawyers testified that after plaintiff's car had been removed from the Kroger premises, in discussing the matter with Brown, he "advised Brown that he had no legal right to hold plaintiff's vehicle for payment of damages to the window."

Before turning to a more detailed consideration of the evidence, we first examine some of the authorities which we believe are applicable in this situation. In our discussion of the authorities, we will assume that plaintiff's car was converted by Brown while acting in the course and scope of his employment with Kroger. Lyon v. Wood, 363 S.W.2d 179, 182 (Tex.Civ.App., 1962, no writ).

In Ware v. Paxton, 359 S.W.2d 897, 899 (Tex.Sup.1962), the court said:

"In Jones v. Ross, 141 Tex. 415, 173 S.W. 2d 1022 (1943), we quoted with approval the following discussion of exemplary damages from 25 C.J.S. Damages § 123, p. 726 [now found in Vol. 25 C.J.S. Damages § 123(5), p. 1144] and we repeat it here as a guidepost to our consideration of the evidence in this case:

" 'The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful.' [173 S.W.2d 1022, 1024]."

Then, in Dennis v. Dial Finance & Thrift Co., 401 S.W.2d 803, 805 (Tex.Sup.1966), the court quoted the identical section from Corpus Juris Secundum, in its entirety, indicating that it is one of the favorite passages of the court on the subject.

Granted that both *Ware* and *Dennis* are from the series of cases involving what the Supreme Court terms "unreasonable collection effort cases," there does not appear

to be any sound reason for a different rule to be applied in conversion cases.[3]

Plaintiff's testimony, summarized, shows that after the car had broken the store window with the "real loud noise" mentioned, he went to the front of the store and "I seen what happened." The car had not hit the brick wall but the plate glass window. Immediately thereafter, a man came up and "He said I am Mr. Brown, I am manager of the store, Kroger's Grocery Store." "He said, do you have insurance on your car? * * * I said no * * * He said I am going to hold your car for damage to this window plate glass * * * I didn't say anything * * * No, I didn't tell him 'you can have my car.' * * * [I] did not at any time ever tell him he could have [my] car * * *"

After the police came up to the scene, he did not tell them that Kroger could have the automobile; and, in a little while the wrecker came and "they hooked on to the car" but the driver did not say anything to him. The driver of the wrecker "handed me a card" but he did not give the wrecker driver permission to take the car. The car was hauled off by the wrecker and he walked on home.

After consultation with his lawyers, either on the day of the incident or the following week, he went to the Kroger store, asked Brown for the car and "he said I am going to hold your car for damage." "He said the window plate glass would cost five hundred dollars. He said I am going to hold your car * * * for the damages, until you pay me." Answering the question: "Then what did you do?" plaintiff said, "Well, I left."

Later, he went out to the wrecking yard, "to see could I get my car," and talked to two [unidentified] men out there, but the substance of the conversation was kept out

of evidence on a Kroger objection. Then, this follows:

"Q. *Now, did you have any other dealings with Mr. Brown or Selman's Wrecking Service after that?*

A. *No, sir.*

Q. Did you leave the dealings then to your lawyer?

A. Yes, sir."

His investigating lawyer, Tatum, testified that on the plaintiff's first visit to his office he called Brown at Kroger Food Store on the telephone and "I inquired of Mr. Brown about what the possibilities were of Ceasar [sic] Singletary getting his car back." He continued his answer:

"And I told him that we were interested in getting the car back for Mr. Singletary and Mr. Brown informed me that he was holding the car until Mr. Singletary paid him for his glass which was broken over there, pay the Kroger Company for their damages."

Answering counsel's leading question, he said that his was a demand for plaintiff's car and Brown "told me that he was holding it and before he could release the man's automobile that he would have to call his superiors in Dallas * * * and he was holding it until Kroger Company was repaid for their glass."

About a week or so later, he called Selman but was unable to get the car, and the next day he again called Brown at Kroger. At this time, he demanded $14.50 from Brown to be used to pay Selman. This being refused, he filed the lawsuit now before this court.

Upon cross-examination, Tatum said that during his conversation with Selman, he

---

3. Citing the "favorite passage" from C.J.S., supra, the San Antonio Court of Civil Appeals in O'Hara v. Ferguson Mack Truck Co., 373 S.W.2d 507, 510 (Tex.Civ.App., 1963, err. ref. n.r.e.) said the rule was applicable to wrongful garnishment and sequestration. There, the trial court's action in disregarding the findings of the jury awarding exemplary damages was upheld.

was advised that the car could be taken away upon payment of $14.50 "for his wrecker charge"; and, while Brown had told him (Selman) to hold the car, "he [Selman] would let it go for $14.50." This was "three or four" days after the Kroger window was broken.

In this résumé, we have taken only the testimony of the plaintiff and his lawyer, often coming in answer to leading questions of plaintiff's counsel. There is no other direct evidence in the record tending to show malice, ill-will, etc.[4]

■ We sustain defendants' point that there was no evidence to warrant the submission of the issue of exemplary damages to the jury in this case. Granted that the action of Brown was, in law, a conversion of the plaintiff's vehicle for which he and his employer should be required to respond in damages; yet and still, considering the circumstances under which plaintiff's car intruded itself upon Kroger's property, the natural excitement relating thereto, the complete lack of offensive language, harassment, or acts of oppression on the part of either Brown or Selman, we find that an award of more than compensatory damages is not sustained by the evidence.

■ Within a week, plaintiff could have had his car restored to him free of all claims of both Kroger and Selman upon payment of $14.50. He chose not to pay such sum and regain possession—and we do not hold that he was required so to do. But, when he sought more than the value of the car, he had the burden of offering competent evidence to support the punitive damages. We decline to permit plaintiff

and his resourceful lawyers to parlay this set of circumstances into a trade of the vintage Chevrolet for a new Cadillac Coupe de Ville.

■■ The imposing line of authorities cited by the plaintiff fails to convince us that this is a case wherein an assessment of exemplary damages is authorized.[5] The so-called "unreasonable collection effort cases" involving exemplary damages have done much to clarify the quantum of proof necessary to the establishment of the right to recover exemplary damages. The modern rule seems to be epitomized by the frequent citation of the quotation now found in 25 C.J.S. Damages § 123(5), p. 1144, set out herein in Ware v. Paxton, supra, 359 S.W.2d at 899, which we prefer to follow in this case. Certainly, we recognize that the unlawful detention of another's property authorizes a judgment for the value thereof predicated upon a finding of conversion. To authorize the imposition of more than compensatory damages, however, requires a showing of conduct of a wanton and malicious nature, "or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful." 25 C.J.S., supra.

Our case is more nearly alike O'Hara v. Ferguson Mack Truck Co., supra, 373 S.W.2d 507, wherein exemplary damages were denied in a case of wrongful sequestration of two trucks. Brown's acts in taking possession of plaintiff's car, and everything else done thereafter by either Brown or Selman, fails to raise the issue of acts of a wanton and/or malicious nature. We con-

---

4. Plaintiff established that there were no court proceedings for attachment, sequestration, etc., nor was there any chattel mortgage upon the car authorizing its seizure or detention. But, Kroger having made no such defense to the action, such evidence was immaterial.

5. We have carefully considered all of plaintiff's authorities: Rodman Supply Company v. Parker, 363 S.W.2d 838

(Tex.Civ.App., 1962, err. ref. n.r.e.); Brown v. Grice, 357 S.W.2d 620 (Tex. Civ.App., 1962, no writ); Werkheiser-Polk Mill Co. v. Langford, 115 S.W. 89 (Tex.Civ.App., 1908); Jackson v. Poteet, 89 S.W. 980 (Tex.Civ.App., 1905, no writ); Gordon v. Jones, 27 Tex. 620 (1864); San Antonio & A. P. Ry. Co. v. Kniffin, 4 Tex.Civ.App. 484, 23 S.W. 457 (1893, no writ).

clude, as did our Supreme Court in Ware v. Paxton, supra, 359 S.W.2d at 902:

"We conclude therefore that there is no evidence to support the jury findings of malice and the trial court's award of exemplary damages."

Defendants' points attacking the award of exemplary damages are sustained.

The third series of points complains of the findings of the jury that plaintiff's vehicle was detained for 440 days with a rental value of $4.00 per day.

Upon the trial, the witness, Williams, a used car dealer who had experience servicing rental cars for the Avis System, testified that he was familiar with the rental value of used automobiles in Angelina County, Texas, and that, in his opinion, the rental value of plaintiff's 1954 Chevrolet was $5.00 per day. Defendants' cross-examination weakened considerably the probative effect of this testimony; but, nevertheless, it remained in the case and upon such basis, the jury awarded not the $5.00 rental value fixed by the witness, but $4.00.

■ The determination of whether Williams possessed the required qualification to express his opinion as to the rental value of the car was within the discretion of the trial judge and is not subject to review in the absence of a clear abuse of discretion. 2 McCormick & Ray, Texas Law of Evidence, § 1401 (2d ed.); Wilson v. Scott, 412 S.W.2d 299, 304 (Tex.Sup.1967). Defendants' objections to this testimony go to the weight to be accorded to the testimony rather than to its admissibility. Points 19 and 20 complaining of the admission of the testimony of Williams are overruled.

■ Considering only the evidence supporting the finding of the jury that the reasonable rental value of plaintiff's car was $4.00 per day, defendants' Point No. 16 does not present error and is overruled. The testimony of Williams constituted *some* evidence in support thereof, its weight being for the determination of the jury.

Points 17 and 18 present the contention that the evidence is insufficient to support the finding of a rental value of $4.00 per day and that the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Considering the entire record, the evidence, admittedly weak, was unchallenged and the defendants made no effort to refute Williams' testimony. The points are overruled.

■ Complaining of the failure of plaintiff to mitigate his damages for loss of use of the automobile, i. e., by paying Selman $14.50 within a week or so after the seizure of the car, defendants overlook the rule of law that where property has been converted, other than under circumstances which would be a technical conversion or the result of a mistake, *no* tender of the converted property may be shown in mitigation of damages for the conversion. Hicks Rubber Co. v. Stacy, 133 S.W.2d 249, 251 (Tex.Civ.App., 1939, no writ); Sibley v. Fitch, 226 S.W.2d 885 (Tex.Civ. App., 1950, no writ); 89 C.J.S. Trover & Conversion § 186, p. 652. Cf. Carpenters Local Union v. Texas State Federation of Labor Bldg. Ass'n, 288 S.W.2d 874, 877 (Tex.Civ.App., 1956, err. ref. n. r. e.).

■ Here, there was no unconditional tender made to plaintiff of his automobile, and the point claiming that the plaintiff, by the payment of $14.50, could have secured possession thereof and thereby mitigated his damages, is without merit. Having no right to tender possession in mitigation, certainly, defendants had no right to place the burden of procuring possession upon the plaintiff. The Points 12 and 22 do not reveal any error and are overruled.

In answer to Special Issue No. 4, the jury found that the defendants "wrongfully detained" plaintiff's automobile for 440 days. The points attacking this issue and finding are No. 14 (no evidence), No. 15 (insufficient evidence), No. 16 (against great weight and preponderance of the evidence). The summary of the evidence

tendered by defendants is substantially correct and we quote it:

"Plaintiff, Caesar Singletary, testified that he purchased another automobile, a 1963 Pontiac, in December, 1966. [The conversion occurred on June 29, 1966]. With respect to pecuniary loss sustained by reason of the detention of his automobile, plaintiff testified that he had to 'borrow a car some', and to do so had to walk across town or go by cab, paying regular cab fare, total amount of expense unknown."

■ Attempting to strengthen their position, the defendants argue at length that the court submitted an erroneous damage issue, i. e., it is improper to fix damages at a rate per day and multiply it by the number of days, exactly what was done here.

The authorities generally condemn this method of submission in this type of case.[6] Plaintiff conceded this to be the rule of law, both upon oral submission and in his supplemental brief, but contends that the defendants are now complaining of the *form* of the submission without having objected thereto in the trial court. The plaintiff's position is well taken. Not having objected to the issues submitting the damages calculated upon a daily basis, defendants may not now complain. Rules of Civil Procedure, Rule 272. The objection now urged has been waived by the failure to object. Rule 274. Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979, 981 (1948); Minugh v. Royal Crown Bottling Co., 267 S.W.2d 861, 862 (Tex.Civ.App., 1954, err. ref.); Wilson v. King, 311 S.W.2d 957 (Tex.Civ.App., 1958, err. ref.).

■ The fact that this ploy will not succeed does not, however, destroy the effect of the points which are before the court—those challenging the sufficiency of

the evidence. As to No. 14 (no evidence), after considering only the evidence favorable to the answer of the jury, plaintiff's own testimony quoted from defendants' brief indicates that there was some evidence to support the claim of loss of use. Point No. 14 is overruled. The answer to Points Nos. 15 and 16, relating to the sufficiency of the evidence, are likewise answered in that (a) we have held that the car was converted by the defendants, (b) detained up until the time of trial, which was for a period of 440 days. These latter two points are overruled.

■ By Points 21 and 23, defendants complain that the allowance of $4.00 per day for 440 days ($1,760.00) "bears no reasonable relation to the value of the automobile" ($175.00), and because "there was no evidence of special use made by the plaintiff and, therefore, as a matter of law, plaintiff sustained no pecuniary loss but was merely deprived of the use of his automobile." Considering the latter point first, it has no merit upon the face, and is overruled. Plaintiff was entitled to the use of his car and during its period of detention to recover the loss of use thereof. Railey v. Hopkins, 50 Tex.Civ.App. 600, 110 S.W. 779, 780 (1908, no writ); Ward v. Odem, 153 S.W. 634 (Tex.Civ.App., 1913). This rule is particularly applicable when interest alone will not fully compensate the plaintiff. Reiner v. Marceau, 338 S.W.2d 285, 289 (Tex.Civ.App., 1960, no writ); 14 Tex.Jur.2d, Conversion § 33, p. 36. See also: Harris v. Christianson-Keithley Company, 303 S.W.2d 422, 428 (Tex.Civ. App., 1957, err. ref. n. r. e.) discussing the older cases on the subject.

In order to put defendants' Point 21 into proper focus, we quote it:

"The Trial Court erred in rendering judgment for plaintiff against defendants

---

6. We are cited to two cases from this court condemning the form of submission used here: Brown v. Spector, 70 S.W.2d 478 (Tex.Civ.App., 1934, no writ) and Associates Investment Company v. Cobb, 386 S.W.2d 578, 583 (Tex.Civ.App.1964,

no writ). The authorities are generally in accord that such submission is not proper. See also: State v. Brunson, 435 S.W.2d 242 (Corpus Christi Civ. App., 1968, application for writ of error filed January 22, 1969, pending).

allowing a recovery for loss of use for 440 days at $4.00 per day, totaling $1,-760.00, because the same bears no reasonable relation to the value of the automobile in question which was only $175.00."

Although not as aptly worded as might be desired, we consider this point, along with the accompanying argument, as one complaining of the *amount* of the award for loss of use of the vehicle. Upon this facet of the matter, the testimony of the plaintiff is not too clear or detailed as to just what his damages were in this regard. While we have held that there is some evidence of the loss of use, we do not believe that the amount of this award should be permitted to stand.

██ It has been said in one of the cases, Montgomery v. Gallas, 225 S.W. 557, 562 (Tex.Civ.App., 1920, no writ):

"* * * It is a matter of common knowledge that there would have to be very exceptional circumstances to make the use of property for a year worth 50 per cent. more than its value. * * *"

There being no "exceptional circumstances" shown here, the award "for a year" is more than eight times the value of the car. In the case from this court cited previously, Brown v. Spector, 70 S.W.2d 478, 480 (Tex. Civ.App., 1934, no writ), the court, after quoting from *Gallas*, supra, said:

"In this case for a period of only 497 days, representing the time the automobile was held by Sheriff Brown up to the filing of the first amended original petition, judgment was rendered in Spector's favor for the use of his automobile a sum in excess of 5½ times the value of the automobile at the time it was seized. The judgment in the sum of $2,485 for the use of this automobile is so against the 'common knowledge' of mankind as to be fundamentally erroneous."

We do not cite *Spector* for the proposition of fundamental error, but for the force of the holding that such an award is manifestly unjust and excessive.

Here, the best that plaintiff can contend that he was deprived of the use of his car for approximately six months, that is, until he got a better one. Assuming that he was entitled to the $4.00 for every day as the rental value of his old car (an assumption upon which the evidence is not completely satisfactory), the award would not exceed approximately $900.00. This figure, in itself, is more than *five* times the market value of his car upon the date it was seized.

The award of $1,760.00 is so grossly excessive that it shocks the judicial conscience. The amount of the award for loss of use of the car is considered by the court to be excessive by the sum of $860.00. In our opinion, under the circumstances of this case, damages for the loss of use of plaintiff's vehicle in the amount of $900.00 would be not only adequate but generous.

It follows from what has been said that the portion of the judgment awarding plaintiff $175.00 as the value of his car which was converted by the defendants is conditionally affirmed; the portion of the judgment awarding exemplary damages in the amount of $3,925.00 is here reversed and judgment rendered for the defendants; and, as to the award of $1,760.00 for loss of use of plaintiff's vehicle, the same is excessive to the extent that it exceeds the sum of $900.00. Unless the plaintiff, within fourteen days after the filing of this judgment, shall file a remittitur to bring the amount of the award for loss of use to the sum of $900.00 (by remitting $860.00 thereof) the judgment as to actual damages, including value of the car and loss of use, will be reversed and remanded for a new trial. If the remittitur is executed and filed within said time, the judgment for the sum of $1,075.00 with interest thereon from the date of judgment in the court below will be affirmed.

All costs of court are hereby adjudged against the plaintiff and defendant equally.

The judgment is reversed and rendered in part, and affirmed in part conditionally.

## ORDER

The suggested remittitur having been timely filed, our conditional affirmance is hereby adjudged to be final this 6th day of March, 1969.