**ANCIRA–WINTON CHEVROLET, INC.,**
Appellant,

v.

**Juda Gay WILKERSON, Appellee.**

No. 15272.

Court of Civil Appeals of Texas,
San Antonio.

March 20, 1973.

Rehearing Denied April 10, 1974.

Judson H. Phelps, Jr., San Antonio, for
appellant.

Theo F. Weiss, Clemens, Weiss, Spencer & Welmaker, San Antonio, for appellee.

BARROW, Chief Justice.

Ancira-Winton Chevrolet has appealed from a judgment entered after a jury trial whereby appellee recovered, pursuant to her motion for judgment, the sum of $3,500.00 for the loss of use of her car because of appellant's failure to timely repair same, plus $3,000.00 exemplary damages for the fraudulent representation that said car could be repaired so as to be in as good a condition as it was prior to its being stolen and completely stripped.

In September, 1971, appellee purchased a new 1972 Chevrolet Camaro from Doyle Motor Company for $4,600.00, and insured it against theft and other hazards with Dairyland County Mutual Insurance Company. In February, 1972, the car was stolen from appellee's residence. It was found near the end of the month by the police, but it had been completely stripped, including the engine. The car was towed to Ancira-Winton, and W. H. Holbrook, an adjuster for Dairyland, determined that the car was not a total loss, but could be repaired for $1,705.42. He told appellee that when repaired the car would be in as good a condition as it was prior to being stolen. Charlie Wilmoth, body shop foreman for Ancira-Winton, agreed to perform such repairs for the estimated sum, and in late March was authorized by appellee to perform same. Wilmoth also represented to appellee that the car, when repaired, would be in as good condition as prior to being stolen. He said the repairs would take about two weeks.

The estimate called for a used engine. At this time the Camaro factory was on strike, and used 1972 engines were in short supply and heavy demand. Appellee checked on her car five or six times, and each time, was advised by Wilmoth that he had been unable to secure an engine, but estimated the car would be ready in "two weeks." In August, 1972, she secured a friend to aid in obtaining the car. He learned that a 1971 engine had been placed in the car, and it needed a valve job. Also, an additional estimated $441.69 was required, which placed the car near a total loss according to Holbrook's original appraisal.

Appellee decided she did not want the car under these circumstances, and on August 28, 1972, filed suit against Dairyland seeking to declare the stripped car a total loss. She also sought to recover from Dairyland the loss of use of said car as well as exemplary damages for Holbrook's fraudulent representation that the car could be restored to its prior condition. On December 12, 1972, Dairyland filed a third-party cross-action against Ancira-Winton and sought indemnity or contribution for any damages that might be recovered by appellee against Dairyland. On December 22, 1972, Ancira-Winton filed a cross-claim against Dairyland and appellee seeking to recover the sum of $2,147.11 for repairs to the car, plus storage charges of $3.00 per day after October 1, 1972, when the repairs were allegedly completed. On January 4, 1973, appellee filed a cross-action against Ancira-Winton seeking to recover the reasonable rental value of the car at the rate of $109.00 per week from April 1, 1972, which was alleged to be a reasonable time for completion of repairs. She also sought exemplary damages of $5,000.00 for gross negligence and the further sum of $5,000.00 because of Wilmoth's fraudulent representation that the engine and other parts would be the same style and model as in the car originally.

Twenty-three issues were submitted to the jury. The jury found that Holbrook, as agent for Dairyland, fraudulently and maliciously represented to appellee that the car could be restored so as to be in as good a condition as it was prior to the time it was stolen, and that appellee should recover the sum of $3,000.00 for exemplary damages from Dairyland. Judgment was entered against Dairyland whereby appellee recovered the sum of $3,800.00, found to be

the cash market value of the car at the time it was stolen, plus interest from March 1, 1972, to entry of judgment, and title to the car was placed in Dairyland. Appellee also recovered $3,000.00 exemplary damages from Dairyland. No recovery was allowed for loss of use.[1] No appeal has been perfected from this part of the judgment.

The jury found that Ancira-Winton agreed to repair appellee's car within a reasonable time, to-wit, June 1, 1972, so that it would be in as good a condition as it was prior to the theft.[2] It was further found that the reasonable rental value of appellee's car in the condition it was in prior to the theft was $100.00 per week. The jury also found that Wilmoth, as authorized by Ancira-Winton, fraudulently represented to appellee that her car could be repaired so as to be in as good condition as it was prior to the theft. It was further found that Wilmoth acted maliciously, and that appellee should recover $3,000.00 in exemplary damages. Judgment was entered against Ancira-Winton whereby appellee recovered the sum of $3,500.00 for loss of the use of the car from June 1, 1972, to entry of judgment on March 2, 1973, together with exemplary damages in the sum of $3,000.00.

Ancira-Winton, hereinafter sometimes referred to as appellant, complains of this judgment by five assignments of error which relate entirely to the question of damages. It is urged by two points that the trial court erred in granting judgment for actual damages of $3,500.00, in that appellee suffered no damage as the result of appellant's acts or omissions and that, in any event, the trial court used the wrong measure of damages.

■ The basis for the recovery of actual damages against appellant is the jury findings in response to Issues Nos. 8–10

1. The policy issued by Dairyland provides for payment of loss of use at the maximum of $10 per day but not to exceed $300.00.

2. The jury found substantially as follows:

Issue No. 1. The reasonable cash market value of the car immediately prior to being stolen was $3,800.00.

Issue No. 2. The reasonable cash market value immediately after was $700.00.

Issue No. 3. Holbrook represented to appellee that the car could be repaired and restored so as to be in as good a condition as it was prior to the theft.

Issue No. 4. Such representation was false.

Issue No. 5. Such representation was willfully made with knowledge of its falsity.

Issue No. 6. Such representation was made with intent to injure appellee.

Issue No. 7. Holbrook was acting as the agent for Dairyland in making such representation.

Issue No. 8. That Ancira-Winton agreed to restore and repair appellee's car so that the same would be in as good a condition as it was prior to the time it was stolen.

Issue No. 9. That Ancira-Winton agreed to do so within a reasonable time after the car was delivered to it.

Issue No. 10. That June 1, 1972, would have been a reasonable time for such restoration and repair.

Issue No. 11. That the reasonable rental value per week of appellee's car in the condition that it was prior to the time that it was stolen from March 1, 1972, to date was $100.00 per week.

Issue No. 12. Holbrook acted with malice in dealing with appellee.

Issue No. 13. Such dealing by Holbrook was authorized by Dairyland.

Issue No. 14. The sum of $3,000.00 should be awarded to appellee as exemplary damages against Dairyland.

Issue No. 15. That Wilmoth represented to appellee that her car could be repaired and restored so as to be in as good a condition as it was prior to the time that it was stolen.

Issue No. 16. Such representation was false.

Issue No. 17. That Wilmoth made such representation willfully and with full knowledge that it was false.

Issue No. 18. That Wilmoth made such representation with intent to injure appellee.

Issue No. 19. That Wilmoth acted with malice in dealing with appellee.

Issue No. 20. Such dealing on the part of Wilmoth was authorized by Ancira-Winton.

Issue No. 21. That appellee should be awarded the sum of $3,000.00 from Ancira-Winton as exemplary damages.

Issue No. 22. That Ancira-Winton did not perform its agreement to make said restoration and repairs on appellee's car.

Issue No. 23. The reasonable cash market value of the car in its present condition is $1,500.00.

that appellant agreed to restore and repair the car in a reasonable time, to-wit, June 1, 1972, so that the car would be in as good a condition as it was prior to the time it was stolen. Recovery was then permitted from June 1st to date of judgment at the rate of $100.00 per week, which was found to be the reasonable rental value of the car in the condition it was in immediately prior to the theft. No complaint is made as to the probative force of appellee's testimony that this was the lowest price quoted to her by several car rental agencies. Appellant urges, however, that appellee did not show any actual loss in that she did not rent a car and did not testify to any expense incurred by her during the period in question. She did not offer any evidence of how her car was used prior to the theft or her subsequent need for same other than to say that she borrowed her folks' car for part of this period. Nevertheless, the record shows that she was deprived of the use of her car from June 1, 1972, the date when it should have been repaired, to August 28, 1972, when she determined the car to be a total loss. Her claim for damages is not limited to reimbursement of actual expenses; therefore, the absence of such expense is not fatal. Holmes v. Raffo, 60 Wash.2d 421, 374 P.2d 536 (1962); 25 C. J.S. Damages § 83c.

■ A more difficult question is presented by appellant's point that the trial court did not use the proper measure of damages. It must be recognized at the outset that appellee was given judgment against Dairyland for the total loss of said car together with interest from date of theft. As a general rule, the allowance of interest is to compensate for the loss of use of the property to date of trial. Thus, where interest is recovered, there can not also be recovery for loss of use. Craddock v. Goodwin, 54 Tex. 578 (1881); Curtis v. Carey, 393 S.W.2d 185 (Tex.Civ.App.—

Corpus Christi 1965, no writ); Harris v. Christianson-Keithley Co., 303 S.W.2d 422 (Tex.Civ.App.—Galveston 1957, writ ref'd n. r. e.); Page v. Hancock, 200 S.W.2d 421 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.); 25 C.J.S. Damages § 83(c).

■ This rule is complicated here in that two defendants are involved, and they are sued for breach of different contractual obligations. Furthermore, we have a unique situation here in that appellee did not recognize that the car could not be restored until about August 28, 1972, and one of the causes for her failure to recognize the loss as total was the repeated representations by appellant's agent that the car would be repaired in "about two weeks." In this situation, we believe that appellee should be permitted to recover for the loss of use of said car for the period from the date the repairs should have been completed until appellee declared the car a total loss. This period is thirteen weeks. The jury finding of $100.00 per week is not attacked in any manner by appellant.[3] Therefore, appellee is entitled to recover actual damages in the total sum of $1,300.-00.

■ Appellant complains by three points of the judgment against it for exemplary damages. Such recovery is based on the jury finding in Issues Nos. 15–21 that Wilmoth falsely and with full knowledge represented to appellee that her car could be repaired and restored so as to be in as good a condition as it was prior to the time that it was stolen. The jury further found that such false representation was made maliciously and with intent to injure appellee. It is apparent that a recovery based on the finding that Wilmoth's representation that the car could be restored to its prior condition was false is inconsistent with the recovery of actual damages for failure to perform such a contract in that

3. No complaint is made of the impropriety of multiplying the weekly rental cost by the total number of weeks. See Kroger Food Co. v. Singletary, 438 S.W.2d 621 (Tex.Civ.App.—Beaumont 1969, no writ); State v. Brunson, 435 S.W.2d 242 (Tex.Civ.App.—Corpus Christi 1968, affirmed); 444 S.W.2d 598 (Tex.1969).

**858**

such finding implies an inability to so restore the car. See Roark v. General Motors Acceptance Corp., 114 S.W.2d 611 (Tex.Civ.App.—Fort Worth 1938, writ dism'd). However, in any event, the record here does not support a recovery for exemplary damages.

In Dennis v. Dial Finance & Thrift Company, 401 S.W.2d 803 (Tex.1966), the Supreme Court stated the test for awarding exemplary damages. It said: "It is generally recognized that exemplary damages may properly be awarded when the plaintiff has suffered actual damage as the result of fraud intentionally committed for the purpose of injuring him." The Court further quoted with approval from 25 C.J. S. Damages § 123(5), as follows:

> "The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometime stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful."

See also Ogle v. Craig, 464 S.W.2d 95 (Tex.1971); Ware v. Paxton, 359 S.W.2d 897 (Tex.1962); Kroger Food Co. v. Singletary, supra; O'Hara v. Ferguson Mack Truck Co., 373 S.W.2d 507 (Tex.Civ.App. —San Antonio 1963, writ ref'd n. r. e.).

Neither Holbrook nor Wilmoth[4] testified at this trial, and the record consists almost entirely of the testimony of appellee. Clearly, the record shows that appellee was kept waiting for several months on a two-week to two-week basis, for the repairs to be completed. Nevertheless, the record is uncontradicted that appellant's delay in completing repairs to appellee's car was caused by the inability to secure a used, 1972 engine, because of the strike at the Camaro plant. It cannot be said that there

is any evidence that Wilmoth's false representation as to appellant's ability to restore the car to its prior condition was intentionally committed for the purpose of injuring appellee. The argument is made that a 1971 engine was eventually placed in the car. However, there was no showing that such an engine, as modified by appellant, would not have operated satisfactorily in lieu of a 1972 engine, which was unavailable. There is no evidence to support the jury finding of malice; and, therefore, the trial court improperly awarded exemplary damages to appellee.

The judgment of the trial court is reversed and here rendered that appellee recover the sum of $1,300.00 from Ancira-Winton with interest thereon from March 2, 1973. The costs of this appeal are taxed one-fourth to appellant and three-fourths to appellee.

---

4. Wilmoth had been discharged by Ancira-Winton prior to the time of the trial.