J. H. WILLIAMS, Appellant,

v.

Jay BERTRAND, Appellee.

No. 6087.

Court of Civil Appeals of Texas.

Beaumont.

May 9, 1957.

458

James M. Crane, Conroe, for appellant.

W. C. McClain, S. Stanford Pitts, Conroe, for appellee.

ANDERSON, Justice.

The appeal is from a judgment of the district court of Montgomery County awarding appellee the manufactured value of timber appellant wrongfully cut and removed from appellee's land and manufactured into lumber. The question for decision, and the only one, is that of whether, on the evidence adduced, appellee was properly permitted to recover of appellant the manufactured value of the timber instead of merely the value of the timber as it stood on the ground before being cut. In other words, the question is that of whether there was sufficient evidence to support a finding that in cutting and removing the timber from the land appellant did so wilfully and without in good faith believing that he had a lawful right to do so. DeWitz v. Saner-Whiteman Lumber Company, Tex.Civ.App., 155 S.W. 980; 28 Tex.Jur. 365, Logs and Timber, Sec. 4. We hold that the evidence was sufficient to support such a finding and the judgment of the court.

Appellant defended on the theory that he cut the timber in good faith, believing that he had a right to do so by virtue of a deed or deeds he had received from one R. C. Copeland. The latter had made him a timber deed March 1, 1955, to the timber on 113.31 acres in the Rueben Copeland Survey in Montgomery County and had made him a deed to the land itself the following day, March 2, 1955. According to his own and appellant's testimony, Cope-land had also taken appellant upon and pointed out to him, before their deal was consummated, what he, Copeland, represented to be the land described in the deeds, and had either delivered or displayed to him field notes a licensed land surveyor had prepared in August, 1954, to the land so pointed out, and older field notes pertaining to the Rueban Copeland Survey. There was also testimony tending to show that Copeland, and perhaps another, told appellant that Cam Harrell, a Conroe attorney, had approved Copeland's title to the 113.31 acres described in the deeds. Appellant did not himself examine the title to the land or have it examined.

The land R. C. Copeland pointed out to appellant as being the land described in the deeds he, Copeland, made to appellant was, in fact, no part of the Rueben Copeland Survey. Instead, it was a part of the Ed. H. Yeiser Survey and was situated considerably north and west of the Copeland Survey. It consisted of 98.8 acres, the north 46.2 acres of which were owned by appellee and comprise the land from which the timber in question was cut, and the remainder of which was owned by one J. W. Williams. The Williams land was fenced, and a substantial fence stood along Williams' north line and appellee's south line. Appellee's land was not otherwise fenced, except for fences along the right-of-way lines of a highway that crossed the west end of the tract diagonally, but its lines were, according to evidence before the court, well marked by both old, conventional markings and more recent painted markings. The muniments of title under which appellee acquired title to the 46.2 acres were all of record in the deed records of Montgomery County, while appellant's grantor had no recorded muniment of title. The official map of the county showed the relative positions of the Copeland, Yeiser, and surrounding surveys. Even slight research would have disclosed appellee to be the owner of the 46.2 acres, or at least would have placed appellant upon notice that he could not safely proceed upon

the theory that he had himself acquired good title from his grantor Copeland. It would have disclosed, also, that the location of the Rueben Copeland Survey had been the subject matter of litigation between earlier claimants of that survey and the owners of a survey lying north of it, and the results of that litigation. Had appellant pursued the matter, he no doubt would have learned, too, that Mr. Harrell had done no more toward giving a title opinion on the 113.31 acres described in the deeds to appellant than to represent that he found no conveyances from certain persons after a particular judgment had been rendered, and had expressly stipulated that his opinion did not include the land's location.

Appellant admitted having seen J. W. Williams' north fence when he went upon the land with Copeland, and to having inquired of Copeland about it. He said Copeland informed him that he, Copeland, was going to sue Williams to have it removed. Despite this information, appellant made no inquiry of J. W. Williams about the matter and still did not have the title he proposed to purchase examined, even though more than half of the land Copeland pointed out to him was enclosed within Williams' fences. Appellant also admitted that Copeland told him, before the land deed was made, that he, Copeland, had previously sold a half interest in the land to one Hearne. Investigation no doubt would have disclosed that this conveyance had been made for a consideration of only $100. Appellant also admitted that Copeland told him that, under the same claim of title, he had previously sold timber in an entirely different survey, one lying east of the Yeiser, and his vendee upon that occasion had not been permitted to cut the timber. He furthermore admitted that before sending his cutters upon appellee's land he noticed that painted markings around the tract which were red when he first went upon the land with Copeland had been repainted white. He said he gathered from this that someone else was claiming the land, and, when inquiry at a couple of houses in the neighborhood failed to disclose who had repainted the lines, he resolved to commence cutting in order to see who was claiming it, though he had not intended to cut the timber until later. When the cutting had little more than begun, one of appellee's representatives accosted appellant, in person, informed him that the land belonged to appellee, and requested him to cease cutting the timber. Appellant admitted this, and that he told appellee's agent that he was going to continue cutting until he was stopped by a court order. Appellant did, however, go with the agent to the office of appellee's attorney in Conroe, where the matter was further discussed. Appellant again announced that he was going to continue cutting until he was stopped by a court order, and was informed that suit would be filed immediately. A temporary writ of injunction was sued out by appellee, but appellant continued to cut the timber until the writ was actually served.

In addition to the foregoing, there was evidence tending to show that appellant paid much less for the land and timber than would have been their worth, had his grantor owned even such interest in them as he represented himself as owning.

All things considered, we think the trial court was justified in concluding that appellant either knew he had no right to appropriate the timber or was so consciously indifferent to the question as to amount to the same thing.

Affirmed.