**FIRST SECURITY BANK & TRUST CO.,**
Appellant,

v.

**O. N. ROACH and G. Wayne Roach et ux.,**
Appellees.

No. 18045.

Court of Civil Appeals of Texas,
Dallas.

March 8, 1973.

Rehearing Denied March 29, 1973.

Edward J. Drake, Brady, Drake & Wilson, Dallas, for appellant.

Shirley R. Levin, Levin, Weinberg & Levin, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

G. Wayne Roach, and wife Georgette Roach, and O. N. Roach, brought this ac-

tion against Lou Levine, individually and doing business as Wholesale Auto Center, Inc., and First Security Bank and Trust Company, of Carrollton, Texas, seeking cancellation and rescission of a motor vehicle retail installment contract and note which had been executed by the Roaches to Levine as part of the purchase price of a 1968 Buick Riviera automobile. The note and contract had been assigned by Levine to First Security Bank and Trust Company (hereinafter called Bank). The Roaches also sought damages for wrongful conversion of the automobile by the bank, for recovery of all payments made on the vehicle both to Levine and the bank, for fair market value of the vehicle at the time of its conversion, and for exemplary damages. Levine failed to appear and answer. The case proceeded to trial before the court and jury and based upon favorable answers by the jury the court proceeded to render judgment in favor of the Roaches and against Levine and the bank. Since Levine has not complained of the judgment against him we refer only to that part of the judgment against the bank. The court expressly found that the original sales contract and note were void and should therefore be cancelled, rescinded and held for naught. The court rendered judgment against the bank in the sum of $646.40, as refund for payments made by the Roaches under said contract to the bank; the sum of $300 for damages for loss of clothing and personal property; and the sum of $5,750 as exemplary damages. From this judgment the bank appeals.

The primary question advanced concerns the judgment for exemplary damages. The jury, in answer to special issue No. 4, found that the bank acted with malice in repossessing and retaining the Roaches' automobile. Malice was defined as "ill will, bad or evil motive, or such gross indifference to the rights of a party as will amount to a wilful or wanton act done intentionally and without just cause or excuse on the part of the party accused of such acts." In answer to special issue No.

5 the jury found that the Roaches should be awarded the sum of $5,750 against the bank as exemplary damages. In this issue the jury was instructed that they may take into account such elements as compensation for inconvenience, attorney's fees, expenses of litigation and other expenses not recoverable as actual damages.

In its points 1 and 2 the bank contends that there is no evidence to support the findings of the jury that the bank acted with malice and for exemplary damages as the consequence of such conduct. Alternatively, the bank argues that the trial court should have ordered a "remittance" of the exemplary damages found by the jury. A resolution of the questions thus presented to us requires a summary of the material testimony which came primarily from Georgette Roach, one of the appellees, and William McClain, who was formerly a vice-president of appellant bank.

Mrs. Roach testified that she and her husband purchased a second-hand 1968 tan Riviera Super Sport Buick automobile from Levine on October 7, 1969. The Roaches expressed their desire to finance the car through their own bank but Levine suggested that First Security Bank and Trust Company would offer a quicker means of financing. The Roaches filled out a credit application, with Levine's help, and he called the bank to request the financing. The bank refused the request at first but when Mr. Roach's father, O. N. Roach, added his name as a co-signer to the note, the financing was approved by the bank. The Roaches paid $670 in cash to Levine to cover the down payment, transfer of title and taxes. They signed the motor vehicle retail installment contract at the Levine place of business. Levine told them that the bank would "take care of the title." Shortly thereafter the bank sent the Roaches a payment book calling for monthly payments of $129.28 due on the 16th day of each month. The Roaches made the payments from November, 1969 through March, 1970. On occasions the Roaches' payments would reach

the bank late but on each of such occasions the bank accepted the payments.

Mrs. Roach said that she waited a couple of weeks after the car had been purchased and then telephoned the bank asking about the duplicate original title certificate which she had never received. She was advised by someone at the bank that the title papers would be forthcoming in a short time. From November until the following April Mrs. Roach at sporadic intervals telephoned the bank at least six or seven times and on each occasion she would inquire when she might expect the title papers and on each occasion she was assured that the title papers would be coming soon. They were never received by her or by her husband.

Some time in the month of January, 1970 Mrs. Roach testified that William McClain, vice-president of the bank in charge of automobile loans, called her and asked her to go out and check the serial number of the Riviera automobile telling her that there had been a "slight mix-up" concerning the title. She went out and copied down the number and came back and read it to Mr. McClain over the phone. At that time McClain told her not to worry and to be patient; that the title certificate would be forthcoming in due time.

On April 1, 1970, when she had still not received the title papers to the automobile, and realizing that the deadline for securing 1970 license plates had arrived, she went to the bank and had a meeting with Mr. McClain. At this meeting he told her about all the problems the bank was having with her car; that the title was in the name of a man by the name of Durham and that the bank would get this problem straightened out eventually. Mrs. Roach told McClain at that time that she needed the car in her work. Mr. McClain informed her that he couldn't get her the title immediately but suggested that she use 1970 license plates from another car the Roaches owned which was not in working order until the title problem had been worked out. At that time Mr. McClain

also suggested that she stop making her payments although at that time she was not in default and the next payment was not due until April 16. McClain said nothing to her concerning possible repossession of the automobile.

Some time during the night of April 11, 1970 the car was removed from Mrs. Roach's possession. The circumstances were as follows: Mrs. Roach and her three children went shopping in the late afternoon of the 11th during which time she made several purchases of clothing. The clothing was placed in the trunk of the Roaches' car. They attended a drive-in movie that evening and upon returning to their apartment about midnight Mrs. Roach parked the Riviera in the parking lot on private property, leaving the personal property in the trunk. The next morning it was discovered that the car and its contents were gone. She subsequently learned that the bank had caused the automobile to be repossessed and on April 13 the Roaches went to the bank for a conference with Mr. McClain. During this conversation Mr. McClain told Mrs. Roach that the bank would let her use a Mustang automobile to drive while the matter was being straightened out. Mrs. Roach said that McClain asked her to sign two instruments in blank. She called her attorney who advised her not to execute the instruments. Mrs. Roach's refusal to sign the papers caused McClain to become very angry. Mrs. Roach then requested that the bank give her back the Riviera but McClain refused. She then told McClain about her personal property which was in the trunk of the automobile and asked to be allowed to get her property from the car. McClain told her that the car was not on the premises whereupon the Roaches then asked if they could drive to where the car was. McClain responded that he "couldn't allow us in or around the vehicle." Mrs. Roach became quite upset and she began to shed tears and the meeting ended on that note. The Roaches later received a notice from the bank that stated

if they paid the entire balance within five days they could get the Buick Riviera returned to them. Failing to do this, the Roaches neither received their car nor recovered their personal property from the car.

Mrs. Roach rented a car for $480 a month for two and one half months after the repossession so that she could continue to work. She was employed as general manager of Shangri-La in Park Forest and her work consisted of putting on fashion shows in the Dallas area. She needed a car to transport the clothing and customers connected with these shows. She also testified that she had made at least ten visits to her doctor because the experience at the bank had left her very upset and distressed. She also claimed that her credit was ruined by the fact that the automobile had been repossessed.

Mr. McClain testified that there was a meeting of representatives of several banks and lending institutions in January or February of 1970 at which time the title problems connected with a number of cars financed for Levine were brought to light. Levine had apparently conceived a scheme whereby through fraudulent means and devices he would finance one car with several lending institutions. Appellant bank had received a total of eighty-five automobile notes from Levine and it appeared that about fifteen of these automobiles involved discrepancies. McClain testified that except for the Roach vehicle and at least one other all of the problems were eventually worked out satisfactorily. McClain said that shortly after the meeting referred to above he called Mrs. Roach and asked her to check her automobile serial number. He told her that "we were having some title difficulties but we are trying to iron them out." While he denied that he gave Mrs. Roach any assurance that she would receive her title he said that he did assure her that the bank would work on it and try their best to get the title for her. McClain testified that after he received the correct serial number of the Riviera automobile from

Mrs. Roach the bank discovered that the actual bona fide title to the Riviera Buick was in another file in the bank, one relating to another customer, Michael Durham. The automobile which had been purchased by the Durhams was a LaSabre Buick automobile and not a Riviera.

McClain then says that the next time he talked with Mrs. Roach was in early April, 1970, either the 1st or 2nd, and that during this meeting he advised Mrs. Roach to employ an attorney but does deny suggesting to her that she transfer plates from another car to the Riviera or that she stop making payments on the contract.

Concerning the facts surrounding the repossession of the Riviera on April 11, McClain contends that the bank thought it was picking up the Durham car at that time. He said the bank received a call from the sheriff's department stating that the officers had discovered a car without 1970 plates and had traced the owner through Austin to be one of the bank's customers, Michael Durham. The bank checked the Durham file, found the account to be in default, and ordered Allstate adjusters to pick up the "Durham car," feeling that the bank would be in a better position if it had the car in its possession.

Concerning the April 13th emotional confrontation with the Roaches, Mr. McClain testified that he did offer them the use of a Mustang automobile while the title problem was being straightened out and that the only instrument the bank wanted the Roaches to sign was relating to liability insurance coverage on the Mustang. He at that time advised Mrs. Roach that he could not let her have the Riviera back because she did not have a title to it. He said he did not remember Mrs. Roach telling him on that occasion that she had some personal property in the trunk of the Riviera. He contends that the bank planned to file a repossession affidavit against the Durhams and unless the Durhams redeemed it in ten days the bank would then acquire legal title. According to McClain in this eventuality they would transfer title

to the Roaches. When asked why he didn't return the Riviera to the Roaches while the bank was going through this repossession procedure against the Durhams McClain responded: "At that particular time I didn't know what was right. We had approximately fifteen problems on cars and I possibly could have given it back and made a mistake or kept it and made a mistake."

McClain testified that the bank had the actual title to the Riviera in its files during all the time in question and that he had known this fact from the date of the conversation with Mrs. Roach in January or February.

■ Appellant concedes that in order for this court to sustain its "no evidence" points of error, the record must disclose one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Tex.L.Rev. 362–363 (1960); Bowen v. Merritt, Incorporated, 417 S.W.2d 313 (Tex.Civ.App., Fort Worth 1967, no writ).

■ Appellant argues that the term "no evidence" does not mean literally no evidence at all but rather it encompasses those situations where the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise of suspicion of its existence so that such evidence will not support a verdict or judgment. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059 (1898). It contends that when viewed in its most favorable light to appellees the testimony falls into this category and must therefore be disregarded by us. Appellant also advances the contention that the mere fact that an act is unlawful or

wrongful is not of itself grounds for an award of exemplary or punitive damages. Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022 (1943); Ware v. Paxton, 359 S.W.2d 897 (Tex.1962).

While we agree with the general principles of law advanced by appellant, we cannot agree with its conclusions and contentions concerning the record relating to the issue of exemplary damages. We are convinced, and so hold, that there is sufficient evidence of probative force to support the jury's answer to special issue No. 4 to the effect that the bank acted with malice towards the Roaches.

■■ We are required to view the testimony in its most favorable light in support of the finding of the vital fact and consider only the evidence and inferences which support such finding and rejecting the evidence and inferences which are contrary to the finding. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Tex.L.Rev. 364 (1960). It is quite evident that the bank was one of the victims of the false and fraudulent schemes promoted by Levine in numerous automobile financing transactions. Obviously, the bank was concerned, and rightfully so, about straightening out the numerous illegal transactions flowing from Levine's acts and conduct but at the same time this court must consider only the rights and responsibilities between the two parties here involved. At the time of the sale of the automobile Levine convinced the Roaches that they ought to utilize the services of the bank and gave the Roaches every assurance that the bank would furnish them with the necessary title papers to the car purchased. The Roaches paid a definite sum of money, $120, for the title and transfer papers. They had every right to expect the bank to obtain for them from the state officials a proper title certificate. When they did not receive this title certificate they called the bank several times and on each occasion they were given assur-

ance that the "title" would be furnished within a short time. During these conversations the Roaches were never advised that the title was in question. Then we consider the crucial conversation in January or February of 1970 between Mrs. Roach and Mr. McClain. In this conversation McClain advised Mrs. Roach of some sort of "mix-up" and asked her to supply the bank with the serial number of the Riviera automobile in the Roaches' possession. She complied with this request and upon obtaining the information McClain admitted that the bank knew from that time that the Roaches' automobile was actually covered by a title in the name of another customer, Michael Durham, who had purchased a LaSabre Buick automobile from Levine. It is quite significant that McClain, though with possession of the knowledge concerning the title to the Riviera automobile, made no effort to disclose these facts to the Roaches until about the first of April, 1970 when Mrs. Roach came into the bank to find out why the title papers had not been received by her so that she could purchase the 1970 license plates for the car. Thus, with full knowledge of the defect in title the bank permitted the Roaches to continue under the belief that the bank would supply the title in due time and permitted the Roaches to continue to make monthly payments on the installment contract. Then came the act of repossession of the Riviera by the bank in the middle of the night on April 11. The testimony from McClain concerning the fact that the bank on that occasion thought it was repossessing the Durham car instead of the Roach car is questionable and was not believed by the jury. McClain admitted that at the time of repossession the *Roaches* were not in default in their payments. While he contends that the bank repossessed the Riviera because it had no license plates and that the *Durhams* were in default on their payments it is quite obvious that since the early part of the year the bank knew that the Roaches did not have a title certificate to the Riviera and further knew that the Roaches could not legally obtain same and 1970 license plates for the simple reason that the bank itself had in its own files a title certificate to the car in Durham's name. The bank cannot rely on the isolated fact that it had title certificate to the Riviera in one of its other files to justify repossessing the car. We hold that the repossession was wrongful in light of the total circumstances of this case heretofore discussed. Then we have the action on the part of McClain in conceiving a plan to straighten out the mix-up whereby he would file a repossession affidavit against Durham which would thereby divest Durham of his title to the Riviera. Added to this we have the acts and conduct on the part of the bank following the act of repossession in deliberately withholding the Roaches' personal property known by the bank to be in the automobile repossessed by them. This deliberate and meaningful act on the part of the bank in prohibiting the Roaches from going to or having access to the Riviera automobile, coupled with Mr. McClain's expressed anger towards Mrs. Roach for refusal to sign proffered instruments in blank, all tend to support the jury's answer to the issue concerning malice on the part of the bank.

■■■ It is settled law in this state that when one sequesters property when he knows or should have known that he has no right to title or possession of the property so taken, that such action will authorize the recovery of exemplary damages. Wright Titus, Inc. v. Swafford, 133 S.W. 2d 287 (Tex.Civ.App., Austin 1939), and Commercial Credit Equipment Corp. v. Elliott, 414 S.W.2d 35 (Tex.Civ.App., Eastland 1967, writ ref'd n.r.e.). While the bank's conduct throughout this unfortunate incident may not have been motivated by any "ill will" toward the Roaches, it nevertheless reflected what the jury may have well believed to be a "gross indifference" to the Roaches' rights. We think the record in this case is entirely sufficient to support the recovery of exemplary damages by the Roaches against the bank and therefore overrule appellant's point 1.

■ By its alternative point 2 appellant asks us to require a remittitur of a portion of the exemplary damage award of $5,750 contending that such amount is excessive. The question of the amount of exemplary damages to be awarded is a difficult one to decide in any case. As this court stated in Home Furniture Co. v. Hawkins, 84 S.W. 2d 830 (Tex.Civ.App., Dallas 1935, writ dism'd), the law furnishes no legal measure for damages in such cases and the amount to be awarded rests largely in the discretion of the jury. Unless an award of exemplary damages is so large as to indicate that it is the result of passion, prejudice, or corruption, or that the evidence has been disregarded, the verdict is conclusive upon the appellate court and will not be disturbed. In Brosofske v. Gregory, 463 S.W.2d 48 (Tex.Civ.App., Houston 14th 1971), the court pointed out that the amount to be awarded is measured by the rule of just punishment, rather than that of fair compensation.

■ Moreover, it has been repeatedly held that there can be no set rule or ratio as between the amount of actual damages and that of exemplary damages. It has been said that the excessiveness *vel non* of exemplary damages must depend upon the facts of the particular case and must rest largely in the discretion of the jury. Such amount of exemplary damages depends upon the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct affects a public sense of justice and propriety. Schutz v. Morris, 201 S.W.2d 144 (Tex.Civ.App., Austin 1947). In this case the jury was certainly entitled to take into consideration lost earnings and profits to the Roaches' business caused by the loss of use of the automobile taken by the bank; mental suffering and distress; doctors' bills; and attorneys' fees. Commercial Credit Equipment Corp. v. Elliott, 414 S. W.2d 35 (Tex.Civ.App., Eastland 1967, writ ref'd n.r.e.); Wright Titus, Inc. v.

Swafford, 133 S.W.2d 287 (Tex.Civ.App., Austin 1939); Associates Investment Co. v. Cobb, 386 S.W.2d 578 (Tex.Civ.App., Beaumont 1964); A. B. Lewis Co. v. Jackson, 199 S.W.2d 853 (Tex.Civ.App., Galveston 1947), and Lyon v. Wood, 363 S. W.2d 179 (Tex.Civ.App., Dallas 1962).

■ In the light of the actual monetary outlay on the part of the Roaches incurred as a result of the repossession of the automobile by the bank as well as the expenditure of reasonable attorneys' fees for prosecuting the suit, we cannot say, in the light of the foregoing authorities, that the award of the jury in this case was so grossly excessive as to lead us to believe that the jury was motivated by bias and prejudice against the bank. Appellant's second point is overruled.

■ In its points 3 through 5 inclusive the bank urges error on the part of the trial court in rendering judgment for rescission of the contract and ordering restoration of the consideration paid by appellees. The trial court found that under the law and the facts the contract entered into between the parties should be, as a matter of law, rescinded and declared to be null and void and all money received by the bank as a result of same should be returned to appellees. A review of the record, and the applicable law, convinces us that the trial court was correct in rendering this judgment. Section 33 of Article 1436–1, Vernon's Ann.Pen.Code of Texas, provides that the owner of an automobile must transfer the certificate of title, along with certain designated information, and that no title to any motor vehicle shall pass or vest until such transfer is so executed. Section 53 of Article 1436–1, V. A.P.C., provides that all sales made in violation of the act shall be void and no title shall pass until the provisions of this act have been complied with. In this case it is without dispute that proper certificate of title was not transferred from Levine to the Roaches so that the sale was void *ab initio*. Robinson v. Densman, 470 S.W.2d

451 (Tex.Civ.App., El Paso 1971, writ ref'd n.r.e.); Bryant v. Hancock, 287 S. W.2d 525 (Tex.Civ.App., Waco 1956), and cases therein cited.

■ Appellant bank, as assignee of Levine, contends that it is the holder in due course of the installment contract and note pursuant to §§ 3.302 and 3.305 of the Business & Commerce Code, Vernon's Tex.Code Ann. Section 3.307 of the Business & Commerce Code, V.T.C.A., places the burden of proof upon the holder to show that it is the holder in due course and in this case there is a presumed finding that appellant bank was not a holder in due course. Rule 279, Texas Rules of Civil Procedure.

In its sixth and final point of error appellant bank contends that the trial court erred in overruling its exception and objection to the submission of special issue No. 1 contained in the court's charge. We have carefully considered this point and find it to be without merit and it is overruled.

The judgment of the trial court is affirmed.