COURTESY PONTIAC, INC., Appellant,

v.

Perry R. RAGSDALE, Appellee.

No. 888.

Court of Civil Appeals of Texas, Tyler.

Dec. 18, 1975.

Rehearing Denied Jan. 8, 1976.

Jack Norwood, Holcomb & Norwood, Tyler, for appellant.

Henry L. McGee, Jr., Tyler, for appellee.

DUNAGAN, Chief Justice.

Perry R. Ragsdale brought this suit against Courtesy Pontiac, Inc. alleging the conversion of his automobile and seeking actual and exemplary damages. Courtesy Pontiac, Inc. appeals from a judgment entered on the jury's answers to four special issues.

Ragsdale went to appellant's place of business on Saturday, July 7, 1973, for the purpose of looking at a 1973 Datsun automobile. He saw a model he liked and reached an agreement with one of appellant's salesmen as to the purchase price of the Datsun and the trade-in value of a 1972 Capri automobile. Ragsdale signed a Retail Installment Contract and other instruments involved in the purchase. He contends, and appellant denies, that there was an oral agreement which conditioned the transaction upon his ability to obtain bank financing of the Datsun over a period of 42 months. Ragsdale drove the Datsun from the car lot and left the Capri.

On July 9, 1973, Ragsdale tried and failed to obtain financing of the Datsun over a 42-month period. He returned to Courtesy Pontiac, Inc. and attempted to exchange the Datsun for the Capri. He was informed that the contract was binding. On the same day, after discussing the matter with his attorney, Ragsdale again returned to Courtesy Pontiac, Inc., asserted the conditional nature of the contract and requested the exchange of the automobiles. This request was refused and Ragsdale departed in the Datsun. At that time, he advised appellant not to dispose of the Capri and was told that the car had already been sold.

Ragsdale's assertions were reiterated in a letter received by Courtesy Pontiac, Inc. on July 11, 1973. Appellant, in a letter received by Ragsdale on July 28, 1973, demanded payment of the purchase price of the Datsun and the furnishing of clear title to the Capri. Ragsdale filed suit against appellant on August 2, 1973. Appellant secured possession of the Datsun on September 17, 1973, by Writ of Sequestration. The automobile had not been driven during this time but had been stored in the garage of Ragsdale's grandparents.

The jury, in response to SPECIAL ISSUE NO. 1, found that there was an oral agreement between Ragsdale and Courtesy Pontiac, Inc. that the sales contract would not take effect unless Ragsdale was able to obtain 42 months financing. Appellant's first point of error attacks the legal suffi-

ciency of the evidence to support this finding. This point was not made in appellant's motion to disregard certain jury findings and is not germane to any assignment of error in appellant's motion for new trial. Appellee contends the point was waived under Rules 324 and 374, T.R.C.P.[1] Rule 324 does not require that grounds of error alleged in a motion to disregard jury findings be included in a motion for new trial. *Pelham Manufacturing Company v. Ridlehuber*, 356 S.W.2d 502, 504 (Tex.Civ.App.— Waco 1962, writ ref'd n. r. e.). However, the motion to disregard does not eliminate the necessity for complaining of other errors in a motion for new trial. *See Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887, 890 (1960). Appellant's failure to attack the sufficiency of the evidence to support the finding of an oral agreement in either its motion to disregard or its motion for new trial resulted in a waiver of that point.

SPECIAL ISSUE NO. 2 was conditioned upon an affirmative answer to SPECIAL ISSUE NO. 1 and inquired as to the market value of the Capri automobile in July, 1973. The trial court reduced this figure by the amount of debt outstanding on the Capri and arrived at the amount of actual damages. Appellant does not complain of this finding or the amount of actual damages.

■ Appellant states that the affirmative answer to SPECIAL ISSUE NO. 3[2] constitutes a finding of conversion. We disagree. Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971). In light of the failure of the oral condition as to financing, Courtesy Pontiac, Inc. exercised wrongful dominion over the Capri when it refused to return the automobile to Ragsdale. SPECIAL ISSUE NO. 3 seems to be the predicate for the exemplary damages awarded under SPECIAL ISSUE NO. 4. In other words, SPECIAL ISSUE NO. 3 amounted to an inquiry whether appellant's unlawful act was also of a wanton and malicious nature warranting exemplary damages. *See Southwestern Investment Co. v. Alvarez*, 453 S.W.2d 138, 141 (Tex. 1970). The conditioning of SPECIAL ISSUE NO. 4, an inquiry as to the amount of exemplary damages, upon an affirmative answer to SPECIAL ISSUE NO. 3 indicates the role of SPECIAL ISSUE NO. 3 as a predicate for such damages. The use of the word, "malice," in the issue would have been helpful but not absolutely necessary. *See Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969). Moreover, appellant did not object to the submission of the issue in this form.

■ Appellant's argument under its second and third points of error is that there was no evidence to support the finding on SPECIAL ISSUE NO. 3. Under the above construction of that issue, this argument is that there was no evidence of that type of conduct by appellant which would warrant exemplary damages. Appellant's fourth point, that appellee is not entitled to exemplary damages as a matter of law, presents essentially the same argument. We therefore determine appellant's second, third and fourth points together and, in

1. Rule 324 provides in pertinent part:
   " * * * a motion for new trial shall be filed as a prerequisite to appeal; provided that neither a motion for new trial nor an assignment therein shall be a prerequisite to the right to complain on appeal of the action of the court in . . . rendering or refusing to render judgment non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, . . ."

   Rule 374 provides in pertinent part:

   "A ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required shall be considered as waived."

2. "SPECIAL ISSUE NO. 3
   Do you find from a preponderance of the evidence that Courtesy Pontiac, Inc., through its agents or employees, willfully and intentionally sold the 1972 Capri automobile in July of 1973, at a time when they knew they were not the owners of said vehicle?
   ANSWER: WE DO."

doing so, consider only the evidence and inferences which support the finding of conduct warranting exemplary damages. *Kroger Food Company v. Singletary,* 438 S.W.2d 621, 625 (Tex.Civ.App.—Beaumont 1969, n. w. h.).

Exemplary damages are available only if the unlawful act warranting the actual damages was of a wanton and malicious nature. *Southwestern Investment Co. v. Alvarez,* supra. Malice may be actual or implied. *See Evans v. McKay,* 212 S.W. 680, 689 (Tex.Civ.App.—Dallas 1919, writ dism'd). Actual malice is characterized by ill will or an intent to injure. *Clements v. Withers,* supra. Implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse. *Webb v. Cooks' Union No. 748,* 205 S.W. 465, 468 (Tex.Civ.App.—Fort Worth 1918, writ ref'd); *Davis v. Nash Central Motors,* 332 S.W.2d 475, 481 (Mo.App.1960). The type of malice necessary to support exemplary damages varies with the nature of the wrongful act involved. For example, actual malice must exist to recover exemplary damages for interference with a contractual relationship. *Clements v. Withers,* supra. On the other hand, malice may be inferred from wrongful acts in an action for damages to riparian rights. *Tennessee Gas Transmission Co. v. Moorhead,* 405 S.W.2d 81, 86 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.).

The type of malice required for exemplary damages in a conversion action is not a settled issue in Texas. An award of exemplary damages for a knowing, but probably nonspiteful, conversion was upheld in *Brown v. Grice,* 357 S.W.2d 620 (Tex.Civ. App.—Austin 1962, n. w. h.). However, this case was not followed and ill will was apparently required in *Kroger Food Co. v. Singletary,* supra, at 627; *See Woodard v. Tatum,* 277 S.W.2d 943, 945 (Tex.Civ.App.—Waco 1955, n. w. h.). Exemplary damages for wrongful sequestration were upheld, despite an absence of ill will in defendant's conduct, in *First Security Bank & Trust Co.*

*v. Roach,* 493 S.W.2d 612, 618 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.). In the *Roach* case, malice was defined in the special issue answered affirmatively by the jury as "ill will . . . or such gross indifference to the rights of a party as will amount to a wilful or wanton act done intentionally and without just cause . . ." *First Security Bank & Trust Co. v. Roach,* supra, at 614; *See C. O. Morgan Lincoln-Mercury, Inc. v. Yancey,* 498 S.W.2d 738, 741 (Tex.Civ.App.—Fort Worth 1973, n. w. h.). A similar definition of malice was approved and intent to injure was inferred in *Masso v. Bryan,* 498 S.W.2d 19 (Tex.Civ. App.—Austin 1973, writ ref'd n. r. e.). Exemplary damages, based upon a definition of malice as "the intentional doing of a wrongful act without just cause . . .", were upheld in *Roy Gladen Buick, Inc. v. Sterling,* 524 S.W.2d 590, 592, 596 (Tex.Civ. App.—Waco 1975, writ ref'd n. r. e.). Ill will or an intent to injure does not seem to have been present in that case. We conclude that ill will may be implied from the knowing conversion of another's property without justification.

We now determine whether or not there was some evidence that the conduct of Courtesy Pontiac, Inc. constituted actual or implied malice so as to support exemplary damages. On July 9, 1973, Ragsdale requested the return of his Capri automobile and appellant, through its employees, refused. There is no evidence that this refusal was motivated by ill will or spite towards Ragsdale. However, given the undisputed finding of an oral agreement, this was a knowing conversion and malice may be implied if the refusal was without justification. Appellant's employee told Ragsdale at that time that the Capri had been sold. Appellant maintains that there was no evidence that the car was sold after Ragsdale's request. However, there is testimony by appellant's employees that the Capri was sold on either July 11 or July 16, 1973. Thus, appellant had no justification for refusing to return the automobile on July 9.

There was some evidence that appellant willfully and intentionally sold the Capri automobile when it knew it was not the owner. There is some evidence that this knowing conversion was without justification. Appellant's points 2, 3 and 4 are overruled.

Appellant's alternative fifth point asks this court to require a remittitur of a portion of the exemplary damage award of $8,000. The amount of exemplary damages rests largely in the discretion of the jury and will not be disturbed unless it is so large as to indicate that it is the result of passion, prejudice or corruption. *First Security Bank & Trust Co. v. Roach,* supra, at 619. The purpose of an exemplary damage award is not the compensation of the plaintiff; the purpose is to punish the defendant. *Bennett v. Howard,* 141 Tex. 101, 170 S.W.2d 709, 713 (1943). However, we conclude that the punishment in this case is unwarranted and excessive by $4,000.

The judgment of the trial court is affirmed subject to the filing of a remittitur of $4,000 by Ragsdale within 15 days from the date hereof; otherwise, the cause is reversed and remanded to the trial court.

## ON MOTION FOR REHEARING

Appellee by his motion for rehearing asserts that we "gave no reason or basis" for our conclusion in our original opinion that the exemplary damages awarded were unwarranted and excessive. Such conclusion was based upon a consideration of all the facts and circumstances after a careful examination of the entire record according to the guidelines as set out in *Carter v. Barclay,* 476 S.W.2d 909, 917 (Tex.Civ.App.— Amarillo 1972, n. w. h.) and *Southwestern Investment Company v. Neeley,* 452 S.W.2d 705 (Tex.1970).

Being of the opinion that we correctly disposed of this appeal by our original decision, we respectfully overrule appellee's motion for rehearing.

## SUPPLEMENTAL OPINION

Appellee, having filed in writing, subject to his motion for rehearing, the remittitur as suggested in our original opinion, and appellee's motion for rehearing this day having been overruled, it is ordered that the judgment as reduced by the remittitur be affirmed.