LOUISIANA PACIFIC CORPORATION,
Appellant,

v.

Duane SMITH et ux., Appellees.

No. 1006.

Court of Civil Appeals of Texas,
Tyler.

June 9, 1977.

William Drew Perkins, Lufkin, for appellant.

Gregg Owens, Adams, Tiller & Owens, Nacogdoches, for appellees.

**DUNAGAN, Chief Justice.**

This is a trespass and conversion lawsuit. Plaintiffs Duane Smith and wife, Jane Smith (hereafter called appellees) brought suit against defendant Louisiana Pacific Corporation (hereafter called appellant) seeking actual and exemplary damages in the amount of $24,892.00 allegedly suffered by appellees as a result of appellant's wrongful trespass onto appellees' land and subsequent destruction and conversion of timber and pulpwood growing thereon. Appellant answered stating that it did not willfully or intentionally enter appellees' property without authority nor authorize the cutting of any timber which it had not purchased, and further denied all material allegations in appellees' pleading.

Trial was to the court and jury, and the jury answered all special issues in favor of appellees.

The court, after overruling appellant's motion for judgment non obstante veredicto and motion to disregard the jury's answers, upon appellees' motion for judgment entered its final judgment awarding the sum of $21,881.76 with interest thereon from the date of entry at the rate of 9% per annum and all costs. Appellant timely made its amended motion for new trial which was overruled by the court, and thereafter appellant timely perfected this appeal.

Appellant presents seven points of error in its brief, complaining that there was either "no evidence" or "insufficient evidence" to support the jury's answers to certain special issues, footnoted below.[1]

---

1. The Court's charge contained the following issues, with other issues omitted:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that Plaintiffs are entitled to the manufactured value of the timber and pulpwood in question?
Answer: 'Yes' or 'No'
ANSWER: Yes
In answering the foregoing special issue, manufactured value will not be applied in regard to timber cut and appropriated where the trespass is the result of inadvertence or mistake, or where the person committing the wrong acted in good faith, and without any intention of committing a wrongful act. Of course the act must not be in reckless disregard of the rights of the owner, but the act must be willful and the wrong intentional, or committed under such circumstances or conscious indifference to the question as to amount to the same thing.

.    .    .    .    .

"SPECIAL ISSUE NO. 4: What do you find from a preponderance of the evidence to be the manufactured value of the Pulpwood cut and destroyed from the land of Duane Smith and Jane Smith on or about April 8, 1974?
ANSWER: $4,868.00

.    .    .    .

"SPECIAL ISSUE NO. 5: What do you find from a preponderance of the evidence to be the manufactured value of the timber cut and removed on the land of Duane Smith and Jane Smith on or about April 8, 1974?
Answer in Dollars and Cents, if any.
Answer: $5,767.07

We reform the judgment of the trial court and as reformed, affirm.

The facts giving rise to this suit occurred over a two-day period beginning on or about April 8, 1974. Appellant hired Richard Heartless, a "logger," to cut timber on a tract of land owned by the Jopling Estate located in Nacogdoches County. The Jopling tract lay generally to the west and south of a 256-acre tract of land owned and managed by appellees. Appellees' tract was forest land consisting primarily of pine timber. Appellees from time to time harvested timber off of this tract and other tracts which they owned.

Because excessive rains had made logging operations difficult on the tract of land where Heartless was cutting plywood logs prior to the occurrence in question, Heartless asked appellant's logging foreman, Billy Fondren, to move him and his crew to a drier tract of timberland. Fondren took Heartless and another logger, Jake Flowers, in Fondren's pickup, to the Jopling estate located several miles away where they determined that the Jopling tract was more conducive to wet weather operations.

Fondren's duties as logging foreman included placing the loggers on the tract or portion of the tract on which appellant was authorized to cut timber. On the day that Fondren drove Heartless and Flowers to the Jopling tract it was raining. Fondren drove up a road on the Jopling tract, parked next to two gates, and gave oral instructions to Heartless and Flowers on where to cut. Flowers was given directions to cut on a different part of the tract than where Heartless was to cut. Concerning the instructions, Heartless testified, "There wasn't no problem, you know, to find or anything. I done just like he [Fondren] said." Heartless testified that he was not confused by the instructions.

Heartless and Jake Flowers began cutting operations soon thereafter on or about April 8, 1974. Heartless moved his equipment to timber which he thought was located on the Jopling tract but was actually located on appellees' tract. Heartless began cutting timber one afternoon or evening on or about April 8, 1974 and had been logging "approximately 5, maybe 6 hours" the next day before appellee Duane Smith discovered the cutting operation and soon thereafter convinced Heartless that he was on the wrong land. The logging operation then ceased after a substantial amount of timber and pulpwood had been cut and removed.

Flowers' testimony supports the testimony of Heartless. Flowers testified that the instructions to Heartless were to go through a "gap" and come to a dirt road, to travel down the road past a pond and through an old fence that "don't amount to nothing," and then go into a second "gap," and begin cutting timber there.

At no time did Fondren leave the truck and go on foot to show Heartless and Flowers the actual areas to be cut. There is undisputed evidence that part of Fondren's job was to physically accompany the loggers to the cutting area and point out the corners and boundary lines so that the loggers would not trespass onto other tracts. There was also testimony indicating that Fondren never did this unless he could drive to the actual cutting site.

"SPECIAL ISSUE NO. 6: What do you find from a preponderance of the evidence to be the manufactured value of the timber cut and destroyed on the land of Duane Smith and Jane Smith on or about April 8, 1974?
Answer in Dollars and Cents, if any.
ANSWER: $5,366.69

. . . . .

"SPECIAL ISSUE NO. 8: Do you find from a preponderance of the evidence that Duane Smith and Jane Smith should recover exemplary damages?
" 'Exemplary Damages' means an amount which you may, in your discretion, award as an example to others and as a penalty or by way of punishment, in addition to any amounts which may have been found by you as actual damages.
Answer 'We do' or 'We do not.'
ANSWER: We do

"SPECIAL ISSUE NO. 9: What sum of money, if any, do you find from a preponderance of the evidence that Duane Smith and Jane Smith should be awarded as exemplary damages?
Answer in dollars and cents.
ANSWER: $4,500.00"

Appellee Duane Smith testified that the fence on the side of his tract where the wrongful cutting took place was good fencing, that it would hold cattle; that there was flagging on the fences and also on the timber along the boundary line; and that he had marked most of the boundary line with red paint.

Allen Jopling, one of the owners of the Jopling tract, testified that he showed the land to two of appellant's employees in the late summer or early fall of 1973; that the portion of the Jopling tract which he showed to appellant's employees was adjacent to appellees' land; that there was a fence between the tracts; that the fence was good enough to hold cows in; that one could tell when he crossed over from one tract to the other; that he showed appellant's employees "the timber and the corners, fence, and lines"; that he walked them around the fences and placed markers on the fences; that he specifically pointed out to them where appellees' tract was; that he "made it clear, and . . . told them when they left in front of my house, not to go through but one gap"; and that he told them "they couldn't go wrong if they stayed inside that one gap, not to pass through more than one gap"; and that to get to appellees' land, they would have to go through a second "gap."

A former employee of appellant, Levi Zane, also testified. Zane was a "procurement forester," whose job involved the purchasing of private timber. Zane testified that the Jopling heirs contacted appellant about selling timber off of the Jopling tract; that appellant sent an employee to "cruise" the Jopling tract to enable appellant to bid on the tract; that one of the Jopling heirs pointed out the Jopling tract to the cruiser; and that the cruiser made a cruise of the Jopling land but also trespassed over on the Smith tract in making the cruise. Zane further testified that in evaluating the cruise data he discovered that trespass and had to adjust the cruise data accordingly; that the section of appellees' tract on which the cruiser trespassed was also the same section where the wrongful cutting took place; that Zane approached appellees about purchasing their timber that had been cruised but that appellees refused to sell that timber; that the fences separating the two tracts were in good condition; that he decided to place more flagging on the lines after Flowers told him they were not sure of the boundaries; that he placed more flagging; that he requested the cruiser, Ming Lee, to place even more flagging on the lines; that Fondren had the maps and had agreed to take care of the additional flagging; and that he did not know if Fondren ever flagged the lines. There is no evidence that Fondren ever set foot on the area of the Jopling tract that was adjacent to the area where appellant's loggers wrongfully cut appellees' timber.

■ Appellant's first two points of error allege that there was "no evidence" and "insufficient evidence" to support the jury's finding that appellees were entitled to the manufactured value of the timber and pulpwood. Damages in a timber case such as this are normally awarded on either market value (also called "stumpage" value) or manufactured value (sometimes called "processed" value). The cases generally define market value to be the value of the timber standing in the tree before the tree has been felled and cut into logs, whereas manufactured value is generally defined as the value of the product into which the timber has been manufactured or processed, such as lumber or newsprint. 69 A.L.R.2d 1335 et seq. Depending on the culpability or degree of negligence of one who harvests timber pursuant to a trespass onto the timberland owned by another, one of the values will be awarded the wronged timberland owner. *Martin v. J. S. Hunt Lumber Co.*, 180 S.W.2d 956 (Tex.Civ.App.—Waco 1944, n. w. h.); 37 Tex.Jur.2d "Logs and Timber" sec. 3 (1962).

A leading case on this subject is *Kirby Lumber Co. v. Temple Lumber Co.*, 125 Tex. 284, 83 S.W.2d 638 (1935) in which the Supreme Court of Texas wrote at page 646:

" . . . The doctrine of manufactured value is based upon the rule of law

that a party whose property has been tortiously taken is entitled to it or its enhanced value until it has been so changed as to alter the title. Under such a rule it is held that the owner of timber may reclaim it when manufactured into lumber, cross-ties, shingles, etc. [citing cases] Notwithstanding the above rule, manufactured value will not be applied in regard to timber cut and appropriated where the trespass is the result of inadvertence or mistake, or where the person committing the wrong acted in good faith, and without any intention of committing a wrongful act. Of course the act must not be in *reckless disregard* of the rights of the owner, but the act must be willful and the wrong intentional, or committed under such circumstances that the law will impute malice. . . . " (Emphasis added.)

The question here is was the conduct of appellant's logging foreman, Fondren, in reckless disregard of the rights of adjoining landowners? We feel that it was.

We have made a thorough study of similar cases on point to determine what conduct constitutes "reckless disregard" and have then compared these cases to the facts in this case as shown by the record. One such case closely on point is *Emporia Lumber Co. v. League*, 105 S.W. 1167 (Tex.Civ. App.1907 n. w. h.), in which the Court of Civil Appeals affirmed an award of manufactured value. In that case the boundary lines of the plaintiffs' timberland were marked and "readily observed," and the plaintiffs' timberland was adjoining the tract of land where timber cutters were supposed to have cut. The Court stated at page 1168 that "The slightest care would have resulted in knowing that they were cutting over on plaintiff's land, and it was either a case of turning the gang loose to cut in that locality, or inexcusable negligence on the part of their foreman to not inform them, and to see to it, that they did not go beyond defendant's line. There is no difference in legal consequences between a willful disregard of the rights of another and a reckless disregard of same."

Another case is *Ripy v. Less*, 55 Tex.Civ. App. 492, 118 S.W. 1084 (1909, n. w. h.), in which a timber cutter failed to correctly follow instructions in locating the timber to be cut. In the *Ripy* case the boundary lines were not in dispute or in confusion, and the court concluded that the lines were "ascertainable by proper care." As to the cutting, the court said, "It might not be a malicious act, because not intended to injure the owner. Every person who cuts timber upon his own land, or who intends to do so, owes a duty to an adjoining landowner to ascertain the boundary line of the adjoining land, if he can, with diligence and care, so as to avoid trespassing upon such adjoining land; and, if he neglects such duty, and negligently and carelessly or recklessly cuts beyond his own premises, he cannot be said to have done so by mistake. The neglect of such duty is in itself evidence of a want of good faith."

Appellant in its brief asserts that the record indicates that the cutting of the timber on the wrong tract was a good faith mistake. However, we feel that Fondren acted in reckless disregard and conscious indifference to the rights of appellees, the adjoining landowners. The law considers such "reckless disregard" or "conscious indifference" to require the same damages as a willful, intentional, or malicious act. *Kirby Lumber Co. v. Temple Lumber Co.*, supra; *LeMieux Lumber Co. v. Neuman*, 437 S.W.2d 356 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.); *Williams v. Bertrand*, 303 S.W.2d 457 (Tex.Civ.App.—Beaumont, 1957, no writ). We have viewed the evidence in its most favorable light in support of the jury's answer to Special Issue Number 1, and in so doing we have determined that said answer is supported by some evidence. *Texas Farm Products Co. v. Leva*, 535 S.W.2d 953, 955 (Tex.Civ.App.—Tyler 1976, n. w. h.); *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118, 121 (Tex.Civ.App. —Tyler 1976, ref'd n. r. e.). Furthermore, we have searched the record for evidence both favorable and unfavorable to the jury's answer and cannot conclude that the jury's answer was against the great weight

and preponderance of the evidence. Accordingly, appellant's first and second points are overruled.

Appellant also supports his contest of the jury's answers to Special Issue No. 1 in urging that (1) an award of manufactured value is actually an award of exemplary damages; (2) a corporation is not liable in exemplary damages for the acts of its employee unless the employee was acting in a managerial capacity; (3) appellees did not offer any evidence of Fondren's "managerial capacity" nor did they request a finding as to whether Fondren was acting in a managerial capacity; and (4) "Thus, the trial court erred in awarding manufactured value, a form of punitive damages, against appellant."

■ Appellant's complaint concerning "managerial capacity" actually goes to the court's charge. Without reaching the legal validity of appellant's statements above, the issue of managerial capacity would be a controlling issue. Appellant completely failed to object to the court's charge and thereby waives his complaint of the omission of a controlling issue. Tex.R.Civ.P. 272, 274 & 279. In 3 McDonald Texas Civil Practice sec. 12.27.1 (1970) it was written:

> "An objection is necessary (and sufficient) to preserve complaint of the error in omitting one or more controlling issues which are necessary to submit completely the component elements of a theory of recovery or of defense relied upon by the *opponent* of the objecting party. . . [W]hen the court submits one or more of the component elements of an identifiable ground of recovery or of defense, but omits an element or elements of the same ground, the parties waive a jury trial upon the omitted element or elements unless they call the court's attention to the omission. Since a party who does not rely upon the issue need not request it, yet must point out the deficiency in the charge, he does so by an objection." (Emphasis supplied.)

"Otherwise, a litigant could speculate on a finding only to repudiate it if it proved adverse." 57 Tex.Jur.2d "Trial" sec. 517, pages 228–229.

■ Having waived a jury trial on this issue appellant is relegated to an evidentiary attack on the implied finding by the court in support of the judgment. We feel there is evidence that Fondren acted in a managerial capacity in controlling the location and size of the timber to be cut, and also in controlling the activities of the loggers.

We shall next consider appellant's points of error numbers four, five, six and seven. These points allege that there was "no evidence" and "insufficient evidence" to support the jury's answers and findings to Special Issues Nos. 8 and 9 and that the court erred in entering its judgment based upon said answers and findings. In Special Issues Nos. 8 and 9 the jury found that appellees were entitled to exemplary damages in the amount of $4,500.00.

Appellant first argues under these four points that "the jury awarded appellee both manufactured value and exemplary damages. The trial court, in effect, is punishing appellant twice . . . . There is *no* legal basis for a double award of exemplary damages and for this reason it was error for the trial court to enter a judgment awarding appellees both manufactured value and exemplary damages."

■ This point is not before us. Appellant did not object to the charge on the basis of double recovery or any other basis, and therefore waived his complaint of double recovery. Tex.R.Civ.P. 272. Appellant made no mention of double recovery in its motion for judgment n. o. v. or motion to disregard the jury's answers, nor are appellant's points of error germane to any assignment of error in its amended motion for new trial. Nowhere has appellant presented this point other than in unsupported argument in its brief. Appellant's points of error are insufficient to present his argument that appellees received a double recovery. Tex.R.Civ.P. 374.

The question then evolves into what evidence does the record reveal on the separate issue of exemplary damages? *Texas*

*Farm Products Co. v. Leva*, supra, at page 958. As previously pointed out in this opinion, there is sufficient evidence that the conduct of appellant through its logging foreman constituted a reckless indifference or conscious disregard of appellees' rights as adjoining landowners. Further, we believe that the jury's finding that appellees were entitled to exemplary damages is not against the great weight and preponderance of the evidence. Among other undisputed facts, the failures of appellant's foreman to be cognizant of previous trespasses on the same land, to be aware of specific cautionary instructions given by Jopling, and to accompany the loggers and physically place them on the correct cutting site have a foreseeable probability of doing harm to adjoining landowners. Fondren knew the complexities of the boundary lines and that the loggers were relying totally upon his instructions, such that he displayed a conscious indifference to the probability of doing harm to adjoining landowners. *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709, 712 (Tex.1943).

The jury awarded $4,500.00 in exemplary damages to appellees. The amount of exemplary damages rests largely in the discretion of the jury and should not be disturbed unless the damages are so large as to indicate that they are the result of passion, prejudice or corruption. *Courtesy Pontiac, Inc. v. Ragsdale*, supra; *First Security Bank & Trust Co. v. Roach*, 493 S.W.2d 612 (Tex.Civ.App.—Dallas 1973, ref'd n. r. e.).

Appellant in its third point of error urges that "The trial court erred in awarding the manufactured value of the timber cut on appellees' land since there was no evidence the timber was made into either lumber or newsprint." The court's charge instructed the jury to find, among other things, the following values:

(a) the market value of the timber cut and removed (Special Issue No. 2) to which the jury answered $2,016.56;

(b) the market value of the timber cut and destroyed (Special Issue No. 3) to which the jury answered $1,876.56;

(c) the manufactured value of the pulpwood cut and destroyed (Special Issue No. 4) to which the jury answered $4,868.00;

(d) the market value of pulpwood cut and destroyed (Special Issue No. 4a) to which the jury answered $123.50;

(e) the manufactured value of the timber cut and removed (Special Issue No. 5) to which the jury answered $5,767.07; and

(f) the manufactured value of the timber cut and destroyed (Special Issue No. 6) to which the jury answered $5,366.69.

The record indicates the following: that before Heartless was transported to the Jopling tract he had been cutting plywood logs on land described as the Middlebrook tract and delivering said logs to appellant's plant in Corrigan, Texas; that appellant manufactured plywood at its plant in Corrigan, Texas; that when Heartless moved to begin cutting on the Jopling tract Fondren told him to cut everything down "that would make a 17 foot log with a 7 inch top"; that a log with such dimensions would "just barely make plywood"; that Heartless or his drivers delivered three loads of logs to the plywood plant in Corrigan, Texas; that Heartless received three receipts each entitled as a "Louisiana Pacific Corporation Weight and Scale Ticket"; that Heartless testified "Well, we just drove in there, weighed in, went on it, they picked the load up off us, off the truck, come back out, weighed the empty weight out, and went on"; and that Heartless received a weight ticket for each load of logs. Nowhere in the record is there evidence of what happened to the timber after it was delivered to appellant's plywood plant. Nevertheless, the above evidence, although circumstantial, carries a strong inference that the timber so delivered was processed or manufactured into plywood, such that we hold there is some evidence to support the jury's findings in that regard.

However, appellant's point of error is well taken regarding the award of manufactured value for the timber and plywood cut and destroyed. The record indicates

that some timber was actually destroyed by the cutting process, and that an amount of timber was cut into logs that were stacked in a "set" and left on appellees' land. The case was apparently tried and submitted to the jury on the premise that all timber left on appellees' land was "destroyed."

We have been unable to find any case where an award of manufactured value was given for timber that was cut and destroyed. In every case and treatise which this court has read, the courts of Texas have allowed manufactured value only where there was evidence establishing that timber wrongfully cut and removed was "appropriated," "improved," "processed," "enhanced" or "manufactured" into a more valuable commodity, and where the trespass and conversion were not the result of a good faith inadvertence or mistake. *Cummer-Graham Co. v. Maddox*, 155 Tex. 284, 285 S.W.2d 932 (1956); *Kirby Lumber Co. v. Temple Lumber Co.*, supra; 69 A.L.R.2d 1351, supplementing 161 A.L.R. 572; 14 Tex.Jur.2d "Conversion" secs. 29–40 (1960); 37 Tex.Jur.2d "Logs and Timber" sec. 3 (1962). The fact that a portion of the timber cut was destroyed or left on appellees' land is, needless to say, proof that it was not manufactured into a more valuable commodity. The jury found that such timber had a manufactured value of $5,366.69.

There is no evidence that any pulpwood was removed from appellees' land, and the special issues concerning pulpwood refer to it as having been destroyed. The jury found that such pulpwood had a manufactured value of $4,868.00.

■ Since there is no evidence that the pulpwood and part of the timber that were destroyed were manufactured into a more valuable commodity, appellant is liable only for the market value of same. That portion of the judgment awarding appellees the manufactured value of the timber and pulpwood that were destroyed is reversed, and judgment is here rendered that appellees are not entitled to the manufactured value of the timber and pulpwood that were destroyed.

■ It appears from the judgment that the court did not include in its judgment the amount found by the jury to be the market value of the timber cut and removed (Special Issue No. 2, to which the jury answered $2,016.56) but instead correctly allowed the appellees to recover the manufactured value of said timber. Obviously appellees could not recover both. However, it also appears that the court made an error in adding the remaining amounts awarded to appellees by the jury. It is within the power of the Court of Civil Appeals to render the judgment which in its opinion should have been rendered by the trial court where, from the face of the record, it appears that the judgment should be reformed in the interest of justice. *Carter v. Barclay*, 476 S.W.2d 909, 918 (Tex.Civ. App.—Amarillo 1972, no writ); *Wofford v. Miller*, 381 S.W.2d 640 (Tex.Civ.App.—Corpus Christi 1964, ref'd n. r. e.); 4 Tex. Jur.2d, Rev., Part 2, "Appeal and Error—Civil Cases" sec. 896 (1974). The jury answered all special issues which asked for a monetary amount to be found. There is no need to remand this cause for new trial on the issue of damages since the correct amount to which appellees are entitled may be determined by mathematical calculation. *McDaniel v. Castro County*, 514 S.W.2d 488 (Tex.Civ.App.—Amarillo 1974, ref'd n. r. e.). Appellees are entitled to recover the total amount of the jury's answers to Special Issues Nos. 3, 4A, 5, 7[2] and 9, which is $13,647.13.

The judgment of the trial court that appellees recover $21,881.76 with interest thereon at the rate of 9% per annum is reversed and rendered in part and reformed and affirmed in part to provide appellees with a recovery of $13,647.13 from appellant with interest thereon at the rate of 9% per annum from the date of entry of the

2. "SPECIAL ISSUE NO. 7: What amount of money, if paid now in cash, do you find from a preponderance of the evidence would be the reasonable cost immediately after the damage, if any, of restoring said land substantially to the same condition in which it existed immediately before such injury, if any?

"Answer: $1,380.00"

trial court's judgment, Tex.Rev.Civ.Stat. Ann. art. 5069–1.05, and as so reformed, is affirmed.

Reversed and rendered in part and reformed and affirmed in part.